**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| GAIL WASHBISH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. |
| v. | | |
| | : | |
| INTERNATIONAL BUSINESS | : | |
| MACHINES CORPORATION, | : | |
| | : | |
| Defendant. | : | April 10, 2023 |

**<u>PLAINTIFF'S MOTION TO</u>**
**<u>VACATE ARBITRATION AWARD</u>**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................................. 3

III.   LEGAL STANDARD ....................................................................................... 7

IV.    ARGUMENT .................................................................................................. 9

      A.     In Light of the Appeals Pending Before the Second Circuit,
           the Court Should Hold Consideration of Plaintiff's Petition in
           Abeyance ................................................................................................ 9

      B.     The Court Should Vacate the Arbitration Award because the
           Arbitrator Erred in Holding that the Plaintiff's Claims Were
           Untimely Despite Her Initiating Her Demand Two (2) Days
           after Receiving a Right to Sue Letter ...................................................... 11

           a.     The Arbitrator manifestly disregarded that Plaintiff's
                 claim would have proceeded in court ............................................... 12

           b.     The Arbitrator refused to consider evidence that
                 Plaintiff initiated her claims only after receiving a right
                 to sue letter from the EEOC, warranting vacatur under
                 9 U.S.C. § 10(a)(3) .......................................................................... 17

           c.     The Arbitrator exceeded his authority under the
                 arbitration agreement, warranting vacatur under 9
                 U.S.C. § 10(a)(4) ............................................................................. 18

V.     CONCLUSION ............................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**

Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local Number 7
    114 F.3d 596 (6th Cir. 1997).......................................................................... 18

Castellanos v. Raymours Furniture Company, Inc.
    291 F. Supp. 3d 294 (E.D.N.Y. 2018) ........................................................ 14

Chandler v. International Business Machines Corporation
    No. 22-1733 (2d Cir.) ............................................................................... 2, 10

Davis v. Mills
    194 U.S. 451 (1904)..................................................................................... 14

DiRussa v. Dean Witter Reynolds Inc.
    121 F.3d 818 (2d Cir. 1997)........................................................................... 7

EEOC v. Comm. Office Prods. Co.
    486 U.S. 107 (1988).................................................................................... 16

Estle v. Int'l Bus. Machines Corp.
    23 F.4th 210 (2d Cir. 2022)............................................................................ 9

Friedmann v. Raymour Furniture Co., Inc.
    2012 WL 4976124 (E.D.N.Y. Oct. 16, 2012)............................................. 14

Gilmer v. Interstate/Johnson Lane Corp.
    500 U.S. 20 (1991)................................................................................ 12, 16

Goldman v. Architectural Iron Co.
    306 F.3d 1214 (2d Cir.2002).......................................................................... 7

Hall Street Associates, L.L.C. v. Mattel, Inc.
    552 U.S. 576 (2008)....................................................................................... 7

Holowecki v. Federal Exp. Corp.
    440 F.3d 558 (2d Cir. 2006).................................................................. 11, 17

In Re: IBM Arbitration Agreement Litig.
    No. 22-1728 (2d Cir.) ............................................................................... 2, 10

In re: IBM Arbitration Agreement Litigation
   No. 1:21-cv-06296 (S.D.N.Y.) ................................................................ 6

Jock v. Sterling Jewelers Inc.
   646 F.3d 113 (2d Cir.2011) ................................................................... 8

Lodi v. International Business Machines Corporation
   No. 22-1737 (2d Cir.) ....................................................................... 2, 10

Logan v. MGM Grand Detroit Casino
   939 F.3d 824 (6th Cir. 2019) ................................................................ 14

Morgan v. Sundance, Inc.
   142 S. Ct. 1708 (2022)....................................................................... 15

Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC
   497 F.3d 133 (2d Cir. 2007) ................................................................. 7

Ragone v. Atlantic Video at Manhattan Center
   595 F.3d 115 (2010) ...................................................................... 15, 16

Rusis v. International Business Machines Corp.
   Civ. Act. No. 18-cv-08434 (S.D.N.Y.) ................................................. 4, 11

Schwartz v. Merrill Lynch & Co.
   665 F.3d 444 (2d Cir. 2011)................................................................. 8

Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.
   559 U.S. 662 (2010)........................................................................... 8

Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,
   548 F.3d 85 (2d Cir. 2008), rev'd and remanded sub nom. on other grounds........... 8

T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.
   592 F.3d 329 (2d Cir. 2010) ................................................................. 8

Tavenner v. International Business Machines Corporation
   No. 22-2318 (2d Cir.) ......................................................................... 2

Thompson v. Fresh Products, LLC
   985 F.3d 509 (6th Cir. 2021) .........................................................passim

Tolliver v. Xerox Corp.
   918 F.2d 1052 (2d Cir. 1990) .......................................................... 11, 17

United Paperworkers v. Misco, Inc.
    484 U.S. 29 (1987)..................................................................................... 18

Washbish v. International Business Machines Corp.
    No. 3:21-cv-01521-AWT (D. Conn.)................................................... 2, 5, 9


**Statutes**

29 U.S.C. § 206............................................................................................ 14

29 U.S.C. § 626...................................................................................... 13, 15

9 U.S.C. § 10..................................................................................... 2, 7, 8, 17


**Other Authorities**

Peter Gosselin and Ariana Tobin
    *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018)  ....................... 4

Thompson v. Fresh Products, LLC
    EEOC Brief, 2020 WL 1160190 (6th Cir. March 2, 2020)……………………passim


**Regulations**

29 C.F.R. § 1625.22 ..................................................................................... 13

## I.   INTRODUCTION

Plaintiff Gail Washbish hereby moves to vacate the Arbitrator's award in her

arbitration proceeding against Defendant International Business Machines Corp.

("IBM").[1] ████████████████████████████████████████████████

████████████████████████████ As the undisputed record shows, ███████████

███████████████████████████ after receiving a right to sue letter from the Equal

Employment Opportunity Commission ("EEOC"), providing her up to 90 days to bring

suit.  See "Right to Sue Letter" dated July 19, 2021 (attached here as Exhibit 1).

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

During the pendency of her arbitration, Plaintiff also filed an action in the United

States District Court for the District of Connecticut, see Washbish v. International

---

[1]     IBM has taken the position that every arbitral document must remain under seal
under the term of IBM's confidentiality provision. IBM's position is unsupported by
Second Circuit caselaw. See, e.g., Lohnn v. Int'l Bus. Machines Corp., 2022 WL 36420,
at *13 (S.D.N.Y. Jan. 4, 2022) (collecting cases)  ("the interest in arbitral confidentiality
has never been understood to alone be sufficient to overcome the public's right to
access judicial documents when otherwise confidential arbitral documents are
submitted to a federal court in connection with a request for the Court to enter judgment
or issue a dispositive order."), appeal withdrawn, No. 22-32, 2022 WL 18232089 (2d Cir.
July 25, 2022). Nonetheless, Plaintiff provisionally files arbitral pleadings and
documents under seal until IBM has had the opportunity to file a motion to permanently
seal these documents, which Plaintiff will oppose.

Business Machines Corp., No. 3:21-cv-01521-AWT (D. Conn.), [2] arguing that the timeliness provision in IBM's arbitration was unenforceable. That case is now an appeal to the Second Circuit and the Second Circuit is also addressing similar issues in four cases that are scheduled for oral argument on May 22, 2023.  See Lodi v. International Business Machines Corporation, No. 22-1737 (2d Cir.); Chandler v. International Business Machines Corporation, No. 22-1733 (2d Cir.); Tavenner v. International Business Machines Corporation, No. 22-2318 (2d Cir.); In Re: IBM Arbitration Agreement Litig., No. 22-1728 (2d Cir.).[3] ███████████████████████

███████████████████████

        Plaintiff has initiated the instant petition to vacate the arbitration award pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10,[4] in order to preserve her ability to vacate the award should the Second Circuit issue a favorable decision in her appeal (and the other appeals currently pending).  Therefore, as explained further below, the Court should hold this petition in abeyance until the Second Circuit soon addresses whether IBM can limit the time to initiate ADEA demands by contract.

---

[2]     Plaintiff Washbish is a resident of Connecticut and her court action originated in Connecticut state court prior to IBM's removal to the District Court of Connecticut.

[3]     The District Court judges in these cases ruled in favor of IBM.  However, for the reasons explained below (and in Second Circuit briefing), the District Court has erred. The lower court opinions undermine the ADEA's statutory scheme and Supreme Court precedent that makes clear that claimants must be able to vindicate their statutory rights in arbitration.

[4]     Plaintiff has initiated the instant Petition before this Court rather than the District Connecticut because the FAA requires that the Petition be initiated in the "district wherein the decision was made . . . ." 9 U.S.C. § 10. Here, the arbitrator was sitting in the Southern District of New York.

In any event, the arbitration award should be vacated. As Plaintiff will explain to the Second Circuit, ██████████████████████████████████████████, if she was proceeding in court her claim would be timely under the federal Age Discrimination in Employment Act's ("ADEA") timing scheme. Indeed, the timing provisions under the ADEA are substantive rights (as opposed to procedural rights) that cannot be abridged or shortened by contract.  See Thompson v. Fresh Products, LLC, 985 F.3d 509, 521 (6th Cir. 2021); see also Thompson v. Fresh Products, LLC, EEOC Brief, 2020 WL 1160190, at *19-23 (6th Cir. March 2, 2020). Arbitration is only a viable alternative to court if a Plaintiff can vindicate her rights as if she was proceeding in court—otherwise the arbitration must be vacated. Therefore, the Arbitrator's Award should be vacated under Section 10(a)(3) and 10(a)(4) of the FAA because ██████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Ms. Washbish was 62 years old at the time of her termination. In August of 2016, Washbish lost her job at IBM as a result of a "Resource Action" -- a mechanism through which IBM laid off large groups of (mostly older) workers. Exhibit 2, Plaintiff's Demand for Arbitration. These layoffs were a result of IBM's discriminatory efforts to systematically reduce its employment of older workers in order to build a younger workforce, pushing out thousands of older workers while hiring younger workers (which IBM often refers to as "Early Professional Hires" or "New Collar" workers), in order to

better compete with newer technology companies, such as Google, Facebook, Amazon, and others.[5] This discriminatory scheme is detailed in the Second Amended Complaint in Rusis v. International Business Machines Corp., Civ. Act. No. 18-cv-08434 (S.D.N.Y.) (Dkt. 179) (attached hereto as Exhibit 3).

Although IBM has sought—both through its arbitration process and in the Rusis case—to cabin each employee separation as if it existed in a vacuum, the EEOC issued a letter of determination on August 31, 2020, that found otherwise. See EEOC Determination Letter attached hereto as Exhibit 4. Following a two-year investigation of allegations of classwide discrimination against IBM, the EEOC found that reasonable cause exists to believe that IBM has been engaged in an aggressive campaign over a five-year period to reduce the number of its older workers and replace them with younger workers, thereby discriminating against its older workers in violation of the ADEA. Id. The EEOC's determination pertained to fifty-eight (58) charging parties "and a class of similarly situated parties" who alleged that they were discharged based on their age and was based on data from IBM terminations between 2013 and 2018.  Id.

The Parties here do not dispute that Ms. Washbish timely filed an administrative charge with the EEOC following her termination and that she received a Right to Sue Letter from the EEOC on July 19, 2021.  See Dkt. 1 (Petition to Vacate) at ¶ 26.  The EEOC's letter to Ms. Washbish informed her: (1) that the EEOC "found [she was]

---

[5]     Indeed, in an article published by ProPublica following an investigation of IBM"s hiring practices, ProPublica reported that it estimates that "in the past five years alone, IBM has eliminated more than 20,000 American employees ages 40 and over, about 60 percent of its estimated total U.S. job cuts during those years." Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/.

discriminated against in violated of the ADEA in that [she] was discharged based on her age"; and (2) that she was required to initiate a lawsuit within 90 days to preserve her statutory rights.  See Ex. 1. ████████████████████████████

████████████████████████████████████████████

████████████████████████ Id.

Plaintiff Washbish, who was given 90 days to bring suit by the EEOC, also initiated a complaint in Connecticut Superior Court, a court of competent jurisdiction, on October 14, 2021.  In response, IBM removed this action to the District Court of Connecticut, in a related case known as Washbish v. International Business Machines Corp., No. 3:21-cv-01521-AWT (D. Conn.).

In her related court action, Plaintiff Washbish acknowledged that she had already initiated an arbitration regarding the same underlying age discrimination claims. However, she clarified that she filed her claims both in court and in arbitration to preserve her rights given that IBM had recently taken the position in other age discrimination cases that its arbitration provisions operated to shorten time afforded claimants by statute to bring claims under the ADEA.  See No. 3:21-cv-01521-AWT, Dkt. 45, at p. 3, n. 2 (attached hereto as Ex. 5).[6]  Plaintiff has never attempted to litigate

---

[6]     In her court action, Plaintiff Washbish argued that the Court should not compel her claims to arbitration without first declaring the provisions in IBM's arbitration agreement that purport to shorten the time in which an individual can bring ADEA claims is unenforceable as a matter of law.  See Ex. 5 at p. 3 ("If this Court is not inclined to continue these proceedings here, Plaintiff respectfully submits that the appropriate action under the circumstances is to declare that the arbitration agreement's alleged restrictions on the substantive timing provisions under the ADEA are unenforceable and **must be excised**.").

the merits of her ADEA claims in multiple forums – *she has simply sought to protect her*

*right to litigate the merits of her claims in a forum (whether in court or arbitration).*



See Letter from IBM to Arbitrator Dated July 12, 2022 (attached hereto

as Ex. 6).

Id.

See Arbitrator Award (attached hereto as Ex. 7).

See Ex. 8.

7

See Ex. 10 at p. 1.

6

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Id. at p. 3.

████████████████████████████████████████████

████████████████████████████   See Ex. 9.

### III. LEGAL STANDARD

9 U.S.C. § 10 provides that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration" in four separate scenarios, including, as relevant to this motion, where "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced" or where "an arbitrator exceeds his authority or executes his duties as an arbitrator so imperfectly to deprive the parties of a definite and final resolution of the dispute". 9 U.S.C. § 10(a)(3)-(4).

Additionally, the Second Circuit recognizes that an arbitrator's "manifest disregard of the law" also warrants vacatur. Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007) (citing Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir.2002), quoting DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir. 1997)). The Second Circuit has also clarified, following the U.S. Supreme Court's opinion in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008), that it views the manifest disregard for the law doctrine as a viable ground

in the Second Circuit and "as a judicial gloss on the specific ground for vacatur of arbitration awards under 9 U.S.C. § 10." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 340 (2d Cir. 2010), citing Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94 (2d Cir. 2008), rev'd and remanded sub nom. on other grounds, Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 (2010).[8]  See also Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 452 (2d Cir. 2011) ("This Court, in the wake of Hall Street Associates, 'concluded that manifest disregard remains a valid ground for vacating arbitration awards," T.Co 592 F.3d at 340 (internal quotation marks omitted); and we have continued to recognize that standard as a valid ground in the wake of the Supreme Court's decision in Stolt–Nielsen, see Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121–22 (2d Cir.2011).").

A moving party can prove a manifest disregard for the law by demonstrating that "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and, second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." Schwartz v. Merrill Lynch & Co., 665 F.3d at 452 (citations and internal quotation marks omitted).

---

[8]     In Stolt-Nielsen S.A., the U.S. Supreme Court expressly stated that it was not deciding whether the "manifest disregard" for the law doctrine "survives" the Court's decision in Hall Street Associates.  See 559 U.S. 662, n. 3 (and assuming *arguendo* that it applied, it had been satisfied).

## IV. ARGUMENT

### A. In Light of the Appeals Pending Before the Second Circuit, the Court Should Hold Consideration of Plaintiff's Petition in Abeyance

As stated previously, Plaintiff has initiated this matter in order to preserve her ability to seek vacatur of her arbitration award pending the outcome of several appeals that are currently before the Second Circuit. In <u>Washbish</u>, No. 3:21-cv-01521-AWT (D. Conn.), Ms. Washbish filed a notice of appeal on March 31, 2023.[9]  A central question that will be presented in her appeal is whether IBM's arbitration provision impermissibly stymies Plaintiff's substantive right to enjoy the full limitations period prescribed by the ADEA. Again, Plaintiff timely filed a charge before the EEOC and submitted her arbitration demand **two days** after receiving Notice of Right to Sue from the EEOC. As

---

[9]       In Plaintiff's court action, on March 9, 2023, the Court dismissed Plaintiff's challenge the enforceability of IBM's arbitration provisions by largely erroneously applying the Second Circuit's opinion in <u>Estle v. Int'l Bus. Machines Corp.</u>, 23 F.4th 210, 214 (2d Cir. 2022) to this case.  However, <u>Estle</u> did not concern the question of whether the timing scheme under the ADEA concerns "substantive" rights (which cannot be waived or abridged) or "procedural" rights (which can be).  Rather, <u>Estle</u> merely reinforced well-established law that the forum to bring an ADEA claim (i.e., whether in court or arbitration) is a "procedural right" and that the fact that IBM did not provide disclosures under the Older Workers Benefit Protection Act ("OWBPA") to a obtain a release of ADEA claims did not mean that IBM could not compel plaintiffs to arbitration. See Estle 23 F.4th at 214 (distinguishing substantive rights "from procedural rights, like the right to seek relief from a court in the first instance.") (citation and quotation marks omitted).  In contrast, other courts that have addressed whether timeliness issues under the ADEA are "substantive" or not have held that they are.  <u>See</u> <u>Thompson v. Fresh Products, LLC</u>, 985 F.3d at 519-20 ("After filing a charge, a person must wait sixty days to bring a civil action…**or, if she waits for a right-to-sue letter, must bring such an action within 90 days of receiving it**, *id.* § 626(e). **These provisions are part of the substantive law of the cause of action created by the ADEA**.") (emphasis added). The EEOC has also taken the position that ADEA limitations periods cannot be abridged by contract.  <u>See</u> <u>Thompson</u>, EEOC Brief, 2020 WL 1160190, at *19-25 (March 2, 2020).

is described more fully below, Section 626(e) of the ADEA provides that a plaintiff who has timely filed an EEOC charge has 90 days to initiate an action in court upon the receipt of a Notice of Right to Sue from the EEOC. If her appeal is successful, there will be an unmistakable basis for vacating the Arbitrator's award, insofar as IBM's arbitration provisions will likely be declared unenforceable as a matter of law because they abridged Plaintiff's substantive right to vindicate her ADEA claims by truncating her limitations period by years. ██████████████████████████████ ███████████████████████████████████████████████████████████████ █████████████████████████████████████████ [10]  For those reasons, Plaintiffs respectfully request that the Court hold this petition to vacate in abeyance until her related appeal can be resolved by the Second Circuit.

Moreover, even before Ms. Washbish's own appeal is decided, the Second Circuit is likely to soon resolve similar issues regarding the enforceability of the timing provisions in IBM's arbitration agreements.   See Lodi, No. 22-1737; Chandler, No. 22-1733; Tavenner, No. 22-2318; In Re: IBM Arbitration Agreement Litig., No. 22-1728. The Second Circuit has already set oral argument in these four cases for May 22, 2023. Indeed, in Lodi, the plaintiff, like Ms. Washbish, indisputably filed a timely EEOC charge and initiated her arbitration claims even before receiving a right to sue letter from the

---

[10]     IBM has taken the position that individuals challenging the enforceability of its arbitration agreement must do so in Court, which is why so many actions against IBM involving similar issues have been filed.  The Arbitration Agreement provides that ████████ ██████████████████████████████████████████████████████████████████ ████████████████████████  See Ex. 2 at p. 28.

EEOC. These appeals also address whether IBM's arbitration agreement's purported waiver of the piggybacking rule of the ADEA is enforceable, another issue raised by this Petition.[11] These four other appeals provide even more reason for the Court to hold Plaintiff's Petition in abeyance until the Second Circuit has had an opportunity to weigh in.

**B. The Court Should Vacate the Arbitration Award because the Arbitrator Erred in Holding that the Plaintiff's Claims Were Untimely Despite Her Initiating Her Demand Two (2) Days after Receiving a Right to Sue Letter**

Having timely filed a charge alleging age discrimination, Plaintiff received a Notice of Right to Sue from the EEOC on July 19, 2021. IBM does not dispute that Plaintiff promptly submitted her demand for arbitration two days later. The law is clear that individuals who file timely charges with the EEOC, as Ms. Washbish did, may wait to bring their claims upon receiving a Notice of Right to Sue.  See Thompson v. Fresh Products, LLC, 985 F.3d 509, 519-20 (6th Cir. 2021) ("After filing a charge, a person must wait sixty days to bring a civil action…**or, if she waits for a right-to-sue letter, must bring such an action within 90 days of receiving it**,  id. § 626(e). **These provisions are part of the substantive law of the cause of action created by the ADEA**.") (emphasis added).  The EEOC has also taken the position that ADEA

---

[11]     In addition to having filed a timely EEOC charge, Plaintiff also would have been able to bring her claim in court under the ADEA's "piggybacking rule", which allows individuals who did not timely submit an EEOC charge to nevertheless assert an ADEA claim in court if they can "piggyback" on someone else's timely filed classwide EEOC charge. See Tolliver v. Xerox Corp., 918 F.2d 1052, 1057-59 (2d Cir. 1990); Holowecki v. Federal Exp. Corp., 440 F.3d 558, 565-70 (2d Cir. 2006). Plaintiff could thus piggyback off of the EEOC charges filed by the named plaintiffs in the collective action, Rusis, Civ. Act. No. 18-cv-08434 (S.D.N.Y.).

limitations periods cannot be abridged by contract.  See Thompson, EEOC Brief, 2020 WL 1160190, at *19-25 (March 2, 2020).

    **a. The Arbitrator manifestly disregarded that Plaintiff's claim would have proceeded in court**

The Arbitrator manifestly disregarded settled case law clearly establishing that arbitration is an acceptable alternative to a party proceeding only so long as an employee can pursue her claims there just as they would be able to in court, without sacrificing any substantive rights. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991). Here, given the fact that the Arbitrator interpreted IBM's arbitration agreement to permissibly truncate Plaintiff's ADEA limitations period by years, Plaintiff's substantive rights were severely curtailed. ████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████ Ex. 11 at p. 20. This case law, when read in conjunction with the Sixth Circuit's recent holding that the limitations period of the ADEA is a substantive right that cannot be contractually shortened, see Thompson v. Fresh Products, LLC, 985 F.3d at 519-21, establishes that the Arbitrator manifestly disregarded Congress's statutory scheme and the EEOC's administrative process by holding that she was required to initiate her claims years before ever receiving a right to sue letter (which she ultimately received).

12

Courts have routinely found provisions of arbitration agreements or contracts shortening the time to file discrimination claims to be unenforceable. The Sixth Circuit, for example, recently held that an employer cannot contractually shorten the limitations period of the ADEA. See Thompson, 985 F.3d at 521. The court explained that the timing provisions contained in the ADEA "are part of the **substantive law** of the cause of action created by the ADEA" and that "the limitations period[] in the . . . ADEA give[s] rise to substantive, non-waivable rights." Id. (emphasis added). Moreover, the court proceeded to explain that "like Title VII, the ADEA emphasizes the importance of the pre-suit cooperative process, outlining the EEOC's obligation upon receiving a charge to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.'" and "[a]ltering the time limitations surrounding these processes risks undermining the statute's uniform application and frustrating efforts to foster employer cooperation." Id.[12]

---

[12]    Under the OWBPA, IBM is obligated to provide disclosures to Plaintiff regarding the ages of other employees selected and not selected for layoff. Its failure to do so renders any purported waiver of the limitations period in the timeliness provision unenforceable. The OWBPA mandates strict requirements that employers must meet in order to obtain a valid waiver from an employee of "any right or claim" under the ADEA. See 29 U.S.C. § 626 (f)(1)(H); 29 C.F.R. § 1625.22(f). Importantly, the EEOC has taken the position that the OWBPA protects employees from waiving rights by abridging their time to pursue their claims if they did not receive the proper disclosures:

> The ADEA does have one other arguably relevant provision with no analogue in Title VII: 29 U.S.C. § 626(f) . . ., which expressly governs waivers of "rights or claims under this chapter." However, § 626(f), read together with Logan's holding that a statutory limitation period is a substantive right, only strengthens the argument against construing the ADEA's limitations period as prospectively waivable.

In so concluding, the Sixth Circuit relied on an earlier case, <u>Logan v. MGM Grand</u> <u>Detroit Casino</u>, 939 F.3d 824, 833 (6th Cir. 2019), where the court had held that an employer could not abrogate the limitations period for a Title VII claim by contract. As the Court reasoned, although statutes of limitations are traditionally regarded as procedural mechanisms, there are exceptions to this general rule where statutes that "create rights and remedies contain their own limitation periods." <u>Id</u>. (citing <u>Davis v.</u> <u>Mills</u>, 194 U.S. 451, 454 (1904)). In such instances, the statute of limitations is considered a "substantive right" that "generally is not waivable in advance by employees." <u>Id</u>. at 829. The Court noted that this conclusion aligned with Circuit precedent "disallow[ing] contractual limitations" on claims brought under other statutory schemes containing their own limitations periods, such as the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d) and the Equal Pay Act, 29 U.S.C. § 206(d). <u>Id</u>. at 830-31 ("[E]nforcing the express limitation period of Title VII not only protects the scheme Congress created with that statute; it is also conceptually in harmony with our interpretation of similar statutes."). Caselaw within the Second Circuit similarly holds that limitations periods under statutes such as the FLSA are substantive rights that cannot be truncated by contract.[13] Further, this Court in <u>Ragone v. Atlantic Video at</u>

_____

<u>Thompson</u>, EEOC Brief, 2020 WL 1160190, at *25. Because IBM did not provide OWBPA disclosures to Plaintiff, Plaintiff cannot have waived her statute of limitations rights by signing the arbitration agreement. To the extent the agreement purports to or is held to waive that rule, that provision is invalid.

[13]     See <u>Castellanos v. Raymours Furniture Company, Inc.</u>, 291 F. Supp. 3d 294, 301 (E.D.N.Y. 2018) (holding that Employee Arbitration Program provision shortening time period to file FLSA claim to 180 days to be unenforceable, as it "contravene[d] congressional commands", "undermine[d] the FLSA's remedial scheme" and was

<u>Manhattan Center</u>, 595 F.3d 115, 125-26 (2010), indicated its agreement with the principles espoused in <u>Logan</u>, including in the context of evaluating the enforceability of an arbitration agreement.[14]

In <u>Thompson</u>, the court extended its ruling in <u>Logan</u> to the ADEA. <u>See</u> <u>Thompson</u>, 985 F.3d at 521. The Sixth Circuit noted that application of the rule against enforcing contractual limitations on the ADEA time period furthers the underlying purpose of the notice provision: "[T]he ADEA emphasizes the importance of the pre-suit cooperative process, outlining the EEOC's obligation upon receiving a charge to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.' 29 U.S.C. § 626(d)(2). Altering the time limitations surrounding these processes risks undermining the statute's uniform application and frustrating efforts to foster employer cooperation." <u>Id</u>. at 521.[15] Importantly, the EEOC

---

unenforceable "under the effective vindication exceptions"); <u>Friedmann v. Raymour Furniture Co., Inc.</u>, 2012 WL 4976124 (E.D.N.Y. Oct. 16, 2012) (refusing to enforce a shortening of an employee's limitations period to pursue claims under the ADEA and Americans with Disabilities Act).

[14]    In <u>Ragone</u>, the arbitration agreement at issue included a provision shortening the time for plaintiff to file a Title VII claim to 90-days; the defendant agreed to waive enforcement of the provision, so this Court did not rule on the provision's enforceability. <u>Id</u>. at 123. The Court however rang a "A Note of Caution", that "[h]ad the defendants attempted to enforce the arbitration agreement as originally written it is not clear that we would hold in their favor … [I]t is at least possible that Ragone would be able to demonstrate that th[is] provision[] w[as] incompatible with her ability to pursue her Title VII claims in arbitration, and therefore void under the FAA." <u>Id</u>. at 125-26.

[15]    IBM has argued that <u>Thompson</u> is distinguishable because it did not involve an arbitration agreement.  However, IBM's argument runs afoul of <u>Morgan v. Sundance, Inc.</u>, 142 S. Ct. 1708, 1713 (2022), which made clear that arbitration agreements must be treated the same as other types of contracts with respect to enforceability. In other words, arbitration agreements are no more enforceable than any other type of contract

submitted an amicus brief in <u>Thompson</u>, also taking the position that the ADEA's limitations period is a substantive, non-waivable right that an employer cannot abridge by contract. <u>See</u> <u>Thompson</u>, EEOC Brief, 2020 WL 1160190, at *19-23. As the EEOC explained, "the ADEA's statutory limitations period is a substantive right and prospective waivers of its limitations period are unenforceable." <u>Id.</u> at *19. The EEOC's reasonable interpretation of the ADEA as set forth in this amicus is entitled to deference is entitled to deference. <u>See</u> <u>EEOC v. Comm. Office Prods. Co</u>., 486 U.S. 107, 115 (1988) ("[I]t is axiomatic that the EEOC's interpretation of [the ADEA], for which it has primary enforcement responsibility, need . . . only be reasonable to be entitled to deference.").

In sum, the <u>Thompson</u> decision, which relied on the EEOC's interpretive expertise, make clear that the ADEA's limitations period is a substantive right that cannot be waived or truncated in an arbitration agreement. <u>Thompson</u> is in accord with the Court's discussion of truncating Title VII's limitations period in <u>Ragone</u>, 595 F.3d at 125-26. The Supreme Court made clear in <u>Gilmer</u>, 500 U.S. at 28, that even though a statutory claim (there, also an ADEA claim) may be subject to arbitration generally, "the prospective litigant [must be able to] effectively . . . vindicate his or her statutory cause of action in the [specific] arbitral forum." Here, ███████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

and there is no basis to distinguish the clear holding in <u>Thomspon</u> and the EEOC's own position.

███████████████████████████████████████████████████

███████████████████████████████████████  See <u>Thompson v.</u>

<u>Fresh Products, LLC</u>, 985 F.3d at 519-20 ("After filing a charge, a person must wait sixty

days to bring a civil action…**or, if she waits for a right-to-sue letter, must bring such**

**an action within 90 days of receiving it**, *id.* § 626(e). **These provisions are part of**

**the substantive law of the cause of action created by the ADEA**.") (emphasis

added).

        The ███████████████████████████████████████████

████████████████████████████████████████████████

████████████.[16]

> b.  **The Arbitrator refused to consider evidence that Plaintiff initiated her claims only after receiving a right to sue letter from the EEOC, warranting vacatur under 9 U.S.C. § 10(a)(3)**

        Under 9 U.S.C. § 10(a)(3), an Arbitrator's award may be vacated for refusing to

hear evidence relevant to the controversy.  Here, the Arbitrator's opinion reflects a

refusal to consider the fact that Plaintiff timely filed an EEOC charge and only initiated

this action after having received a right to sue letter from the EEOC.  This is an

additional ground for vacatur in this case. Plaintiff Washbish emphasized this refusal to

consider the evidence in her motion to reconsideration and the Arbitrator's denial of

reconsideration and final award demonstrates a continued refusal to consider such

---

[16]     As explained in note 13 *supra*, Plaintiff should also have been able to proceed in her arbitration by making use of the piggybacking rule of the ADEA. See <u>Tolliver</u>, 918 F.2d at 1057-59; <u>Holowecki</u>, 440 F.3d at 565-70. While IBM has maintained that its arbitration agreement waived Plaintiff's ability to use the piggybacking rule, such a waiver is likewise unenforceable because it would impermissibly truncate the Plaintiff's ADEA limitations period.

17

evidence.  See Motion for Reconsideration, Ex. 8 at p. 3 (emphasizing the demand in this case was filed a mere two days after receiving a right to sue letter from the EEOC); and Ex. 9 (ignoring this evidence in the final award).

### c. The Arbitrator exceeded his authority under the arbitration agreement, warranting vacatur under 9 U.S.C. § 10(a)(4)

Finally, the Arbitrator exceeded his authority under 9 U.S.C. § 10(a)(4).  An Arbitrator acts outside the scope of his or her authority when the award that he crafts does not "'draw[] its essence from the agreement'" or is "the arbitrator's 'own brand of … justice.'"  Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local Number 7, 114 F.3d 596, 599 (6th Cir. 1997) (quoting United Paperworkers v. Misco, Inc., 484 U.S. 29, 38 (1987)). An arbitrator's award fails to draw its essence from the agreement when: "(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on 'general considerations of fairness and equity' instead of the exact terms of the agreement."  Id. at 600.

Here, the Arbitrator's award conflicted with the terms of the arbitration agreement, which authorized the arbitrator ██████████████████████████ ████████████████████████████████████████████████████ ██████████████████████  There is no question that the Plaintiff would be moving forward in litigation had she not signed the arbitration agreement and instead pursued her claims in court. Specifically, there is no genuine dispute that she initiated an action

18

within the 90 days set forth in the EEOC's letter, as contemplated by the ADEA's statutory scheme.  See Thompson, 985 F.3d at 519-20. Additionally, as explained previously, Plaintiff should have been able to utilize the piggybacking rule as a remedy that would permit her claim to proceed.

## V.  CONCLUSION

For the foregoing reasons, in arbitration, Plaintiff has been deprived the rights available to her under the ADEA and thus vacatur is necessary.  Plaintiff respectfully requests that the Court vacate the Arbitrator's award █████████████ ████████████████████████████████████████████████████ ███████████████████████ after receiving a right to sue letter from the EEOC.

Dated: April 10, 2023

Respectfully submitted,

GAIL A. WASHBISH,

By her attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (NY Bar No. 2971927)
Zachary Rubin (NY Bar No. 5442025)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, zrubin@llrlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2023, I caused a true and correct copy of the foregoing to be electronically mailed to Defendant's known counsel, who has agreed to accept service of this underlying petition to vacate and agreed to execute a waiver of service form upon being served with the related petition to vacate.

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan

20