# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, DAVID HO ENG, BRIAN HAUPT, PHILIP MONSON, CLAUDIA ZIEGLER, SALLY GEHRING, and JOHN MASON, individually and on behalf of all other similarly situated individuals, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Civil Action No. 1:18-cv-08434<br>) |
| v. | ) **JURY DEMANDED**<br>) |
| INTERNATIONAL BUSINESS MACHINES CORP. | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

<u>**SECOND AMENDED CLASS**</u>
<u>**AND COLLECTIVE ACTION COMPLAINT**</u>

1.      This is a class and collective action brought by Edvin Rusis, Henry Gerrits, Phil McGonegal, David Ho Eng, Brian Haupt, Philip Monson, Claudia Ziegler, Sally Gehring, and John Mason, on behalf of themselves and all other similarly situated employees who have worked for Defendant International Business Machines Corporation (hereinafter "IBM"), alleging that IBM, through its termination and hiring practices, has violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq*., as well as the laws of the various states in which the employees worked.[1] As described further below, IBM has discriminated, and continues to discriminate,

---

[1]      Pursuant to the Court's Order of March 26, 2021 (Dkt. 156), Plaintiff David Ho Eng asserts his claim only under New Jersey state law, as the Court dismissed his ADEA claim.

against its older workers, both by laying them off (or terminating or constructively discharging them) disproportionately to younger workers and then not hiring them for open positions. Over the last several years, IBM has been in the process of systematically reducing its employment of older workers in order to build a younger workforce. Between 2012 and the present, IBM has laid off at least 20,000 employees over the age of forty. Such discriminatory layoff and hiring practices constitute unlawful discrimination under the ADEA and state anti-discrimination law.

2.      Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

3.      Plaintiffs also bring class claims under the laws of the states in which they have worked pursuant to Fed. R. Civ. P. 23.

## II.  **PARTIES**

4.      Plaintiff Edvin Rusis is 62 years old and resides in Laguna Niguel, California. Mr. Rusis worked for IBM for approximately fifteen (15) years before his separation, effective June 27, 2018.

5.      Plaintiff Henry Gerrits is 70 years old and resides in Cary, North Carolina. Mr. Gerrits worked for IBM for approximately thirty-three (33) years, before his separation, effective on June 27, 2018.

6.      Plaintiff Phil McGonegal is 58 years old and resides in Atlanta, Georgia. Mr. McGonegal worked for IBM for approximately thirty-four (34) years before his separation, effective approximately June 30, 2018.

2

7. Plaintiff David Ho Eng is 59 years old and resides in Sacramento, California. Plaintiff Eng worked for IBM in New Jersey for approximately six (6) years before his separation, effective approximately March 31, 2018.

8. Plaintiff Brian Haupt is 62 years old and resides in Weare, New Hampshire. Plaintiff Haupt worked for IBM for approximately eighteen (18) years before his separation, effective approximately June 27, 2018.

9. Plaintiff Philip Monson is 61 years old and resides in Stoneham, Massachusetts. Plaintiff Monson worked for IBM for approximately twenty-nine (29) years before his separation, effective approximately September 4, 2019.

10. Plaintiff Claudia Ziegler is 60 years old and resides in Aventura, Florida. Plaintiff Ziegler worked for IBM for approximately thirty-seven (37) years before her separation, effective approximately December 17, 2020.

11. Plaintiff Sally Gehring is 64 years old and resides in Carlsbad, California. Plaintiff Gehring worked for IBM for approximately forty (40) years before her separation, effectively approximately May 31, 2016.

12. Plaintiff John Mason is 59 years old and resides in Westfield, New Jersey. Plaintiff Mason worked for IBM for approximately fourteen (14) years before his separation, effectively approximately June 27, 2018.

13. Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

14. Plaintiffs Rusis and Gehring also bring this case as a class action on behalf of themselves and similarly situated individuals over the age of forty (40) who

worked for IBM in California whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

15.     Plaintiff Gerrits also brings this case as a class action on behalf of himself and similarly situated individuals over the age of forty (40) who worked for IBM in North Carolina whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

16.     Plaintiffs Eng and Mason also bring this case as a class action on behalf of themselves and similarly situated individuals over the age of forty (40) who worked for IBM in New Jersey whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

17.     Plaintiffs Haupt and Monson also bring this case as a class action on behalf of themselves and similarly situated individuals over the age of forty (40) who worked for IBM in Massachusetts whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

18.     Plaintiff Ziegler also brings this case as a class action on behalf of herself and similarly situated individuals over the age of forty (40) who worked for IBM in New York whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

19.     Defendant International Business Machines Corp. is a New York corporation with its principal place of business in Armonk, New York. IBM is an American multinational technology business that offers services and goods ranging from computing, cloud platforms, advanced analytics tools and others.

### III.    JURISDICTION AND VENUE

20.     This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq*. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

21.     The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in Armonk, New York.

### IV.    STATEMENT OF FACTS

22.     Plaintiffs were among thousands of IBM employees to be laid off (or otherwise separated from IBM) recently, as the result of a shift in IBM's personnel focus to the generation of workers referred to as "Millennials" (which IBM defines as the generation born after 1980) that began in approximately 2012.  At that time, IBM began a program to reform itself into a leading company in the fields of cloud services, big data analytics, mobile, security and social media. As a part of this transformation, IBM endeavored to begin heavily recruiting Millennials in order to make the face of IBM younger, while at the same time pushing out older employees. At the direction of IBM's CEO Virginia Rometty and other corporate leaders, IBM instituted a plan to bring in 25,000 younger employees that it referred to as "Early Professional Hires" or "New Collar Hires." At the same time, in order to make room for these younger workers, IBM sought to reduce its headcount of older workers over a period of several years.

23.     In an article published by ProPublica following an investigation of IBM's hiring practices, ProPublica reported that it estimates that "in the past five years alone, IBM has eliminated more than 20,000 American employees ages 40 and over, about 60 percent of its estimated total U.S. job cuts during those years." Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

24.     As reported by ProPublica, IBM's shift in focus toward the Millennial workforce came as "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." Id. In response to that problem, IBM's CEO Virginia Rometty "launched a major overhaul that aimed to make IBM a major player in the emerging technologies of cloud services, big data analytics, mobile security and social media, or what came to be known inside as CAMS" and "sought to sharply increase hiring of people born after 1980." Id. Additionally, IBM embraced the belief that "CAMS are driven by Millennial traits." Id.

25.     Moreover, in 2006 one of IBM's consulting arms issued a paper that referred to workers in the "Baby Boomer" generation as "gray hairs" and "old heads," stated that "successor generations . . . are generally much more innovative and receptive to technology than baby boomers," and advised that "What businesses can't afford to do is simply rehire their experienced workers and put them back into their old jobs." See, The Maturing Workforce: Innovation in Workforce Enablement, IBM Business Consulting Services, https://www-935.ibm.com/services/uk/bcs/pdf/maturing-workforce-feus01291-1.pdf (2006).

26.     As another expression of IBM's shift in focus to embrace Millennials, at a 2014 IBM conference called "Reinvention in the Age of the Millennial," IBM announced its intent to "embrace the 'Millennial mindset'" and announced that "What's good for Millennials is good for everyone." See Reinvention in the Age of the Millennial, https://ibmcai.com/2014/12/16/reinvention-in-the-age-of-the-millennial/ (Dec. 16, 2014).

27.     Throughout the company, IBM implemented a plan to replace its headcount of older workers with younger ones.  In conversations and corporate planning documents, executives and managers used terms such as "continuous talent refresh," "correcting seniority mix," and "shifting headcount" toward "Early Professional Hires."  Indeed, IBM had a goal of achieving 55% Early Professional Hires by 2020.  In 2017, IBM CEO Virginia Rometty boasted on CNBC's Mad Money that 50% of all IBM employees were now Millennials.

28.     IBM has reduced the population of its older workers through several methods. Many older employees have been laid off through reductions in force or layoffs, which IBM refers to as "Resource Actions."  (Meanwhile, IBM shields its youngest employees from layoff, exempting recent college graduates following their hire date.)  IBM has also reduced its population of older workers by terminating older employees for pretextual reasons, or by constructively discharging them, or by conditioning their continued employment on untenable choices they are unlikely to accept, such as relocation.

29.     Additionally, while older workers who lost their jobs through layoffs that IBM calls "Resource Actions" have frequently been encouraged to use IBM's internal hiring platform to apply for other open IBM positions for which they are qualified, IBM

has generally prevented workers subject to these layoffs to be hired into other positions. IBM has put obstacles in the way of such workers being hired into different positions, thus helping to ensure that these older workers are removed from the company and younger workers placed into open positions.

30.     Prior to 2014, IBM provided lists to any workers who were laid off, which disclosed the positions and ages of all the employees laid off from their business units at the same time, as well as a list showing the positions and ages of all those in the business units that were not being laid off.  IBM distributed this information, presumably, in order to comply with the Section 626(f) of the ADEA, which requires disclosure of this information if an employer seeks to obtain a release of age discrimination claims from a group of employees. However, in 2014, in an apparent effort to conceal its systematic effort to shed its older workers, IBM stopped disclosing this information to the employees. While IBM could no longer include a release of ADEA claims in its severance agreements with its employees as a result, it opted instead to require its employees to agree to binding individual arbitration of those claims, in order to receive a small severance payment.  Many IBM employees who were laid off, including the named plaintiffs in this action, rejected the severance offer and did not sign the arbitration agreement.

31.     On approximately August 31, 2020, the Equal Employment Opportunity Commission ("EEOC") issued a classwide determination following an investigation of age discrimination at IBM. In that determination, the EEOC found reasonable cause to believe that IBM discriminated older employees through layoffs that took place between 2013 and 2018.  The EEOC explained in this determination letter that its investigation

uncovered "top-down messaging from IBM's highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." The EEOC revealed that it had analyzed data from across the company and that it was primarily older workers (85%) who were in the total potential pool of those considered for layoff.  The EEOC stated in the determination letter that its conclusion was supported by dozens of interviews it had conducted across the company, and it rejected IBM's attempt to justify and defend each of the 58 layoffs analyzed in that investigation through individualized explanations.

32.     Plaintiff Rusis began working at IBM in 2003 as a strategic services specialist and later became a solution manager for IBM's global system integrator alliances. In March 2018, Plaintiff Rusis received a letter from IBM stating that he was being laid off, effective on June 27, 2018. After being notified that he would be laid off, Plaintiff Rusis used IBM's internal hiring platform to apply for five positions for which he was qualified, including one position on his former Global System Integrator Sales team. Plaintiff Rusis did not receive a response regarding any of these job applications.

33.     Plaintiff Gerrits began working for IBM, in August 1985, and most recently held the position of global commodity manager. On March 29, 2018, Plaintiff Gerrits received a letter from his manager informing him that he was being laid off by IBM effective June 27, 2018.  Plaintiff Gerrits was one of the oldest employees in his group. Although Plaintiff Gerrits applied to several positions through IBM's internal hiring platform for which he was qualified, he did not receive any response to his applications.

34. Plaintiff McGonegal began working for IBM in 1986 in Atlanta, Georgia. Most recently, Plaintiff McGonegal worked for IBM as a second line manager of its asset management organization. Plaintiff McGonegal was let go by IBM on June 30, 2018.

35. Plaintiff Eng began working for IBM in 2012, and most recently held the position of Senior IT Specialist. Plaintiff Eng worked for IBM in New Jersey. Mr. Eng was let go by IBM on March 31, 2018. Following his separation, Mr. Eng attempted to find a new position through IBM's internal hiring platform, and a hiring manager indicated that he wished to hire Mr. Eng. One of Mr. Eng's IBM Career Managers, however, prevented Mr. Eng's hire for the new position.

36. Plaintiff Haupt began working for IBM in approximately 2000. Plaintiff Haupt worked as a software sales specialist on a subscription software support team in Massachusetts. Plaintiff Haupt was one of the oldest employees in his group. After IBM notified Plaintiff Haupt on March 29, 2018, that he would be laid off effective June 27, 2018, he applied to other positions at IBM. Although Plaintiff Haupt applied to more than a dozen positions through IBM's internal hiring platform for which he was qualified, he did not receive any response to his applications.

37. Plaintiff Monson began working for IBM in approximately 1990. Plaintiff Monson worked for IBM in Massachusetts, in IBM's Digital Sales group. Plaintiff Monson was laid off in a Resource Action effective September 4, 2019. Plaintiff Monson was replaced by three younger employees.

38. Plaintiff Ziegler began working for IBM in approximately 1983. In her final position prior to her termination, Plaintiff Ziegler worked in New York and held the position of content producer in IBM's Marketing and Communications group. On

November 17, 2020, Plaintiff Ziegler was informed that she would be laid off effective December 17, 2020. Following her termination, a younger employee took over Plaintiff Ziegler's job duties.

39. Plaintiff Gehring began working for IBM in approximately 1976. Plaintiff Gehring worked for IBM in California as a software engineer. On March 2, 2016, Plaintiff Gehring was informed that she would be laid off in a Resource Action effective May 31, 2016. Plaintiff Gehring was one of the fifty-eight (58) individuals whose charges were included in the EEOC's investigation that led to the agency's determination finding reasonable cause to believe that IBM engaged in age discrimination against older workers, issued on August 31, 2020.  She filed a charge of discrimination with the EEOC in approximately November 2016 alleging that IBM had discriminated against her and other employees on the basis of age.

40. Plaintiff Mason began working for IBM in 2004 and most recently held a position in IBM's Strategic Programs & Experience Design group within the Global Business Services Organization. Plaintiff Mason worked in New Jersey. Plaintiff Mason was informed in March 2018 that he would be laid off in a Resource Action, effective June 27, 2018. After he was informed that he would be terminated, Plaintiff Mason reached out to numerous managerial contacts in other areas of IBM in order to inquire out other positions, but he was not able to find another position at IBM. Prior to his termination, Plaintiff Mason mentored younger IBM employees through IBM's Consulting by Degrees program.

## V.    **COLLECTIVE ACTION ALLEGATIONS**

41.    Plaintiffs bring this case as a collective action under the ADEA on behalf of IBM employees over the age of forty (40) who have worked anywhere in the country whose employment separated within the relevant period, who may opt in to this action.

42.    These employees who may opt in to this collective action are similarly situated to the named Plaintiffs. They have all worked for IBM under substantially similar conditions and have all been subjected to IBM's policy and practices of targeting for layoff and disproportionately ending the employment of employees over forty (40) years old. They have also all been subject to IBM's policy of precluding those employees from consideration for other open internal IBM positions for which they are qualified.

## VI.    **CLASS ACTION ALLEGATIONS**

43.    Plaintiffs also bring class action claims pursuant to Fed. R. Civ. P. 23 under the laws of California, North Carolina, New Jersey, Massachusetts, and New York, on behalf of IBM employees over the age of forty (40) who have worked for IBM in those respective states and whose employment separated within the relevant period.

44.    These California, North Carolina, New Jersey, Massachusetts, and New York classes all meet the prerequisites of Fed. R. Civ. P. 23 in that:

   a. The classes are so numerous that joining all members is impracticable. The exact number of the members of each class is unknown, but it is estimated that there have been well more than forty (40) IBM employees over the age of forty (40) whose employment has ended in each of these

states within the relevant period. As a result, joinder of all of these individuals is impracticable.

b. There are questions of fact and law common to all of the putative class members, because all of those individuals were subject to IBM's uniform effort to shift its personnel focus to Millennials, leading to the unlawful termination of a disproportionate number of older IBM employees, in violation of the laws of their respective states.

c. With respect to these common issues, the claims of the named plaintiffs are typical of the claims of IBM employees over the age of forty (40) who had worked in each of these states and who lost their jobs with IBM.

d. Plaintiffs and their counsel will fairly and adequately represent the interests of each class. The named plaintiffs have no interests adverse to or in conflict with the class members whom they propose to represent. Plaintiffs' counsel have litigated and successfully resolved many dozens of class action cases involving employment law and have substantial experience representing employees in discrimination claims.

e. The questions of law or fact common to all members of each class predominate over any questions affecting only individual members. The common questions include, among other things, whether IBM targeted older employees for layoff, or otherwise disproportionately ended the employment of older workers, and whether IBM refused to consider hiring those employees to other open positions for which they were qualified due to their age.

      f.   Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery for many IBM employees in these states, briefing of legal issues, and court proceedings.

## VII.   **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

45.    Plaintiffs Rusis, Gerritts, McGonegal, Ziegler, and Gehring timely filed Class Charges of Discrimination with the EEOC. More than sixty (60) days have passed since they submitted those Charges of Discrimination.

## COUNT I

(Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*)
(On Behalf of Plaintiffs and Class)

46.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

47.    IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiffs, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the ADEA. IBM's violation of the ADEA has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs and similarly situated employees have lost their jobs.

48.    This claim is brought on behalf of a class of IBM employees across the country who may choose to opt in to this case, pursuant 29 U.S.C. §§ 216(b), 626(b).

## COUNT II

(California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.*)
(On Behalf of Plaintiffs Rusis, Gehring, and a California Class)

49.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

50.     Plaintiffs Rusis and Gehring bring this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in California during the relevant period and have been subjected to the discriminatory practices described herein.  IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiffs Rusis and Gehring, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq*. IBM's violation of California law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs Rusis, Gehring, and similarly situated employees who have worked in California, have lost their jobs.

## COUNT III

(North Carolina Employment Practices Act,
N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3, common law wrongful discharge)
(On Behalf of Plaintiff Gerrits and a North Carolina Class)

51.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

52.    Plaintiff Gerrits brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in North Carolina during the relevant and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Gerrits, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the North Carolina Employment Practices Act, N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3 and common law wrongful discharge. IBM's violation of North Carolina law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Gerrits and similarly situated employees have lost their jobs.

## COUNT IV
(New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*)
(On Behalf of Plaintiff Eng and a New Jersey Class)

53.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

54.    Plaintiffs Eng and Mason bring this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in New Jersey during

the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiffs Eng and Mason, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq*. IBM's violation of New Jersey law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs Eng, Mason, and similarly situated employees have lost their jobs.

## COUNT V
(Massachusetts Anti-Discrimination Law, G.L. c. 151B § 4(1B))
(On Behalf of Plaintiffs Haupt, Monson, and a Massachusetts Class)

55.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

56.     Plaintiffs Haupt and Monson bring this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in Massachusetts during the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiffs Haupt and Monson, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the Massachusetts Anti-Discrimination Law, G.L. c. 151B, § 4(1B). IBM's violation of Massachusetts law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs Haupt, Monson, and similarly situated employees have lost their jobs.

## COUNT VI
(New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*)
(On Behalf of Plaintiff Ziegler and a New York Class)

57.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

58.     Plaintiff Ziegler brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in New York during the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Ziegler, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. IBM's violation of New York law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Ziegler and similarly situated employees have lost their jobs.

## JURY DEMAND

Plaintiffs request a trial by jury on all claims.

18

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1.      Permission for Plaintiffs to notify other IBM employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

2.      Find and declare that IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*.;

3.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count II and appoint Plaintiffs Rusis and Gehring, and their counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in California, and whose employment with IBM ended within the relevant time period;

4.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count III and appoint Plaintiff Gerrits and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in North Carolina, and whose employment with IBM ended within the relevant time period;

5.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count IV and appoint Plaintiffs Eng and Mason, and their counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in New Jersey, and whose employment with IBM ended within the relevant time period;

6.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count V and appoint Plaintiffs Haupt and Monson, and their counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in Massachusetts, and whose employment with IBM ended within the relevant time period;

7.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count VI and appoint Plaintiff Ziegler and her counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in New York, and whose employment with IBM ended within the relevant time period;

8.      Award compensatory damages, including back pay and front pay, in an amount according to proof;

9.      Reinstate Plaintiffs and similarly situated employees to their positions;

10.     Award all costs and attorney's fees incurred prosecuting this claim;

11.     Award liquidated damages and all appropriate statutory and regulatory damages;

12.     Award interest;

13.     Issue injunctive relief in the form of an order directing IBM to comply with the ADEA and applicable state law.

14.     Any other relief to which Plaintiffs and class members may be entitled.


                                        Respectfully Submitted,

                                        EDVIN RUSIS, HENRY GERRITS, PHIL
                                        MCGONEGAL, DAVID HO ENG, BRIAN
                                        HAUPT, PHILIP MONSON, CLAUDIA
                                        ZIEGLER, SALLY GEHRING, and JOHN
                                        MASON, on behalf of themselves and all
                                        others similarly situated,

                                        By their attorneys,

                                        /s/ Shannon Liss-Riordan

                                        Shannon Liss-Riordan (NY Bar No. 2971927)
                                        Thomas Fowler, *pro hac vice*
                                        Zachary Rubin (NY Bar No. 5442025)
                                        LICHTEN & LISS-RIORDAN, P.C.
                                        729 Boylston Street, Suite 2000
                                        Boston, MA 02116
                                        (617) 994-5800
                                        Email:  sliss@llrlaw.com, tfowler@llrlaw.com,
                                        zrubin@llrlaw.com


Dated:        July 21, 2021



## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of the

foregoing document was served on all counsel of record for Defendant in this matter by

electronic mail on July 21, 2021.


                                        /s/ Shannon Liss-Riordan
                                        Shannon Liss-Riordan