# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| **GAIL A. WASHBISH,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **NO. 3:21-CV-01521 (AWT)** |
| **v.** | : | |
| | : | |
| **INTERNATIONAL BUSINESS** | : | |
| **MACHINES CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | **August 8, 2022** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT INTERNATIONAL BUSINESS**
**MACHINES CORPORATION'S MOTION TO DISMISS**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD ........................................................................................ 6

III.   ARGUMENT ...................................................................................................... 7

     A.    The Court Should Enter a Declaration That the Timing Provision of IBM's
           Arbitration Agreement is Unenforceable and that Claimant Either May
           Proceed in This Court or Proceed in Arbitration Only After the Arbitration
           Agreement is Excised. .......................................................................... 7

           1.    In arguing that the arbitration agreement does not allow Plaintiff to
                 adjudicate her claims on the merits, IBM has waived the right to
                 arbitrate by its conduct. ............................................................. 8

           2.    The ADEA's timing scheme is a substantive right that cannot be
                 abridged by contract. ................................................................ 10

           3.    Recent opinions from the SDNY involving IBM are unpersuasive. ........ 15

     B.    Plaintiff Should Be Permitted to Engage in Discovery Pertaining to IBM's
           Scheme to Fraudulently Induce Plaintiff to Waive Her Right to Proceed in
           Court. .................................................................................... 18

IV.   CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

14 Penn Plaza LLC v. Pyett,
  556 U.S. 247 (2009) ..................................................................................................... 4, 12

Am. Exp. Co. v. Italian Colors Rest.,
  570 U.S. 228, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) ................................................. 3

AT&T Mobility LLC v. Concepcion,
  563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ............................................. 5, 6

Bensadoun v. Jobe-Riat,
  316 F.3d 171 (2d Cir. 2003) .................................................................................. 7, 18, 21

Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.,
  944 F.3d 225 (4th Cir. 2019) ........................................................................................... 6

Browning v. AT&T Paradyne,
  120 F.3d 222 (11th Cir. 1997) ....................................................................................... 12

Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,
  117 F.3d 655 (2d Cir. 1997) ........................................................................................... 21

Castellanos v. Raymours Furniture Co.,
  291 F. Supp. 3d 294 (E.D.N.Y. 2018) ............................................................................. 14

Chandler v. International Business Machines Corp.,
  2022 WL 2473340 (S.D.N.Y. July 6, 2022) ............................................................. passim

Chung Chang v. Warner Bros. Entertainment, Inc.,
  2019 WL 5304144 (S.D.N.Y. Oct. 21, 2019) ................................................................. 14

Davis v. Mills,
  194 U.S. 451 (1904) ........................................................................................................ 13

E.E.O.C. v. Commercial Office Products Company,
  486 U.S. 107 (1988) ........................................................................................................ 12

Estle v. International Business Machines Corp.,
  23 F.4th 210 (2d Cir. 2022) ...................................................................................... 14, 17

Garfield v. J.C. Nichols Real Estate,
  57 F.3d 662 (8th Cir. 1995) ........................................................................................... 12

Gilmer v. Interstate/Johnson Lane Corp.,
  500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) ............................................... 4, 18

Green Tree Fin. Corp.-Alabama v. Randolph,
    531 U.S. 79 (2000) ........................................................................... 4

Guaranty Trust Co. v. York,
    326 U.S. 99 (1945) .......................................................................... 11

In Re: IBM Arbitration Agreement Litig.,
    2022 WL 2752618 (S.D.N.Y. July 14, 2022) ........................................... passim

Lodi v. International Business Machines Corp.,
    2022 WL 2669199 (S.D.N.Y. July 11, 2022) .................................. 4, 10, 15, 18

Logan v. MGM Grand Detroit Casino,
    939 F.3d 824 (6th Cir. 2019) ........................................................... 12, 13

Lohnn v. Int'l Bus. Machines Corp.,
    2022 WL 36420 (S.D.N.Y. Jan. 4, 2022) ................................................ 20

Matthews v. Commonwealth Edison Co.,
    128 F.3d 1194 (7th Cir. 1997) ............................................................ 5

McCormack v. International Business Machines Corp.,
    145 F. Supp. 3d 258 (S.D.N.Y. 2015) ......................................... 6, 21, 22, 23

McFarlane v. Altice USA, Inc.,
    524 F. Supp. 3d 264 (S.D.N.Y. 2021) ................................................... 5

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) ........................................................................ 4

Morgan v. Sundance, Inc.,
    142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022) .......................................... 9, 10

Morrison v. Circuit City Stores, Inc.,
    317 F.3d 646 (6th Cir. 2003) ........................................................... 13

Nicosia v. Amazon.com, Inc.,
    834 F.3d 220 (2d Cir. 2016) .............................................................. 7

Oubre v. Entergy Operations, Inc.,
    522 U.S. 422 (1998) ............................................................. 13, 14, 17

Powell v. Omnicom,
    497 F.3d 124 (2d Cir. 2007) ............................................................ 17

Ragone v. Atlantic Video at Manhattan Ctr.,
    595 F.3d 115 (2d Cir. 2010) ............................................................ 14

iii

Rowell v. BellSouth Corp.,
433 F.3d 794 (11th Cir. 2005) ................................................................... 5

Schnabel v. Trilegiant Corp.,
697 F.3d 110 (2d Cir. 2012) ...................................................................... 6

Schreiber v. Friedman,
No. 15CV6861CBAJO, 2017 WL 5564114 (E.D.N.Y. Mar. 31, 2017) ............ 9

Singh v. Uber Techs. Inc.,
939 F.3d 210 (3d Cir. 2019) ............................................................... 5, 19

Spira v. J.P. Morgan Chase & Co.,
466 F. App'x. 20 (2d Cir. 2012) ............................................................... 12

Stanley v. A Better Way Wholesale Autos, Inc.,
No. 3:17-CV-01215-MPS, 2018 WL 3872156 (D. Conn. Aug. 15, 2018) ........ 9

Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.,
468 F.3d 523 (8th Cir. 2006) ...................................................................... 6

Sun Oil Co. v. Wortman,
486 U.S. 717 (1988) ................................................................................ 11

Thompson v. Fresh Products, LLC,
985 F.3d 509 (6th Cir. 2021) .............................................................. passim

U.S. Nutraceuticals, LLC v. Cyanotech Corp.,
769 F.3d 1308 (11th Cir. 2014) .................................................................. 6

Valle v. ATM Nat., LLC,
2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ............................................... 14

Vernon v. Cassadaga Valley Cent. Sch. Dist.,
49 F.3d 886 (2d Cir. 1995) ................................................................. 11, 12

Woo Jung Cho v. Cinereach Ltd.,
2020 WL 1330655 (S.D.N.Y. March 23, 2020) ........................................... 14

Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico., Inc.,
999 F.3d 37 (1st Cir. 2021) ........................................................................ 5

**Statutes**

29 C.F.R. § 1625.22(f) ................................................................................ 13

29 U.S.C. § 626(d)(2) ................................................................................ 10

Age Discrimination in Employment Act of 1967, *as amended*, ("ADEA"),
    29 U.S.C. § 621 *et seq.*.................................................................................. passim

Federal Arbitration Act ("FAA"),
    9 U.S.C. §§ 1 *et seq.*...................................................................................... passim

Older Workers' Benefit Protections Act ("OWBPA"),
    29 U.S.C. § 626(f)........................................................................................... passim

**Other Authorities**

Thompson v. Fresh Products, LLC,
    EEOC Brief, 2020 WL 1160190 (6th Cir. March 2, 2020) ............................. 2, 12, 14, 16

I.       INTRODUCTION

Following an extensive investigation by the U.S. Equal Employment Opportunity

("EEOC") that lasted years, Plaintiff Gail Washbish received a "right to sue" letter dated **July**

**19, 2021** informing her: (1) that the EEOC "found [she was] discriminated against in violated of

the ADEA in that [she] was discharged based on her age"[1]; and (2) that she was required to

initiate a lawsuit within 90 days to preserve her statutory rights. Plaintiff did as the EEOC

instructed and filed her age discrimination complaint in Connecticut Superior Court, a court of

competent jurisdiction, on October 14, 2021.

Defendant International Business Machines Corporation ("Defendant" or "IBM")

removed Plaintiff's complaint to this federal court and now moves to dismiss Plaintiff's action,

arguing the Plaintiff must arbitrate her claims.  In seeking to compel Plaintiff to arbitration and

dismiss her case with prejudice, IBM does not hide its scheme to stymie Plaintiff's efforts to

vindicate her statutory rights in arbitration.  IBM freely admits that it <u>will</u> argue in arbitration

that Plaintiff's "ADEA claim is time-barred and has little likelihood of success." Dkt. 13 at 7.

This Court must be wondering how IBM could possibly argue that Plaintiff's claims are "time-

barred" and with "little likelihood of success" when Plaintiff indisputably filed timely charges

with the EEOC and timely asserted her claims within the statutory period required by the EEOC

and ADEA (Age Discrimination in Employment Act of 1967, *as amended*, ("ADEA"), 29 U.S.C.

§ 621 *et seq.*). IBM relies on a provision of its arbitration agreement that it contends sets a 300-

---

[1]        <u>See</u> Ex. A to Plaintiff's Amended Complaint.  Plaintiff's charge was one of many similar
charges of age discrimination filed with the EEOC in recent years.  Indeed, in August 2021, the
EEOC issued a determination letter indicating that the EEOC's extensive investigation into IBM
revealed systemic age discrimination at IBM being directed from the "highest ranks."  <u>See</u> Dkt.
41 at ¶ 21, n. 1 (referencing EEOC Determination Letter dated August 31, 2020 (available at
Dkt. 28-1)).

day time limit to demand arbitration notwithstanding the filing of an EEOC charge.  However,

IBM's arbitration agreement – at least insofar as IBM construes it – is unenforceable and thus, as

explained below, Plaintiff's claims must either: (1) proceed in this Court; or (2) proceed in

arbitration *only after* this Court declares any contractual limitation on the substantive statutory

rights Plaintiff asserts under the ADEA are unenforceable and must be **excised** from the

arbitration agreement.  See, e.g., Thompson v. Fresh Products, LLC, 985 F.3d 509, 521 (6th Cir.

2021) (heeding the EEOC's interpretation of the ADEA, the Sixth Circuit recently held that the

ADEA's timing scheme is a substantive right that cannot be waived by contract); Thompson v.

Fresh Products, LLC, EEOC Brief, 2020 WL 1160190, at *19-23 (6th Cir. March 2, 2020)

(accord).[2]  Plaintiff, in her Amended Complaint, now expressly brings a claim under the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, requesting that the Court issue such a

declaration.  See Dkt. 41, Count III.  **Crucially, in this action, all Plaintiff seeks is to ensure**

**that her right to effectively adjudicate the merits of her age discrimination claims – claims**

**that the EEOC determined have merit in response to the indisputably timely filing of a**

**charge against IBM - is not impeded by IBM's arbitration agreement.**

    **First**, IBM cannot have Plaintiff's claims dismissed without prejudice while

simultaneously arguing that she has no substantive right to vindicate her claims under the terms

---

[2]    IBM's assertion that the arbitration agreement compels an arbitrator to find Plaintiff's claims are untimely demonstrates why Plaintiff cannot have her claims compelled to arbitration, unless at a minimum, this Court first declares that Plaintiff's claims are timely as a matter of law and should proceed on the underlying merits. The arbitration agreement's timeliness provision is unenforceable, to the extent that it truncates the limitations period.  IBM argues that even though Plaintiff herself timely submitted an EEOC charge within 300 days of her termination, which the EEOC then investigated and determined that Plaintiff's claims under the ADEA were meritorious, and despite the fact that the arbitration has abridged the time that Plaintiff would have had to pursue her claim in court (absent the arbitration agreement) by years, the timeliness provision is enforceable. IBM's argument falls flat.

of the arbitration agreement that IBM seeks to enforce.  In arguing that the arbitration agreement

eviscerates Plaintiff's <u>substantive</u> rights under the ADEA, IBM has rendered its motion to

dismiss Plaintiff's claims with prejudice untenable.  If this Court is not inclined to continue these

proceedings here, Plaintiff respectfully submits that the appropriate action under the

circumstances is to declare that the arbitration agreement's alleged restrictions on the substantive

timing provisions under the ADEA are unenforceable and **must be excised**. <u>See</u> <u>Am. Exp. Co. v.</u>

<u>Italian Colors Rest.</u>, 570 U.S. 228, 236, 133 S. Ct. 2304, 2310, 186 L. Ed. 2d 417 (2013) (the

"effective vindication" exception to arbitration "**would certainly cover a provision in an**

**arbitration agreement forbidding the assertion of certain statutory rights**.") (emphasis

added).  IBM appears intent on obtaining a dismissal with prejudice in this Court and then a

dismissal on alleged contractual timeliness grounds in arbitration.  If IBM succeeds with this

unjust ploy, Plaintiff will be greatly prejudiced and will likely again have to return to this Court

to seek effective redress of her statutory rights – rights that may not be abridged by contract as

IBM argues.[3]  Accordingly, to the extent the Court compels Plaintiff to arbitration, **it should**

**first declare that the arbitration provisions intended to deprive Plaintiff of her substantive**

---

[3]      Moreover, IBM previously unfairly accused Plaintiff of "abusing the judicial and arbitral process" (<u>see</u> Dkt. 13 at 7) merely by filing claims necessary to preserve her legal claims in the face of an unprecedented effort by IBM to deny the statutory rights of wrongfully terminated workers who the EEOC has already determined had their rights violated.  This case does not exist in a vacuum.  It is one of many similar cases involving systematic age discrimination at IBM.  Certainly, at the end of the day, only one court or arbitrator should rule on the *ultimate merits* of Plaintiff's underlying ADEA claims. However, this Court should not grant IBM's request to dismiss this action with prejudice given the justified concerns that IBM will itself abuse the arbitration process in an unlawful effort to deny Plaintiff her substantive rights under the ADEA. <u>See</u> Arbitration Agreement (Ex. A to Kennedy Decl., Dkt. 14) at 4 (unlawfully purporting to limit the substantive rights to litigate an ADEA claim and stating that "[t]he filing of a charge or complaint with a government agency…shall not substitute or extend the time for submitting a demand to arbitration.").

3

**rights under the ADEA are unenforceable as a matter of law**. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S. Ct. 1647, 1653, 114 L. Ed. 2d 26 (1991) (holding that an arbitration clause will be enforced only "[s]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum"), quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985); Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000) (discussing effective vindication rule); 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 273-74 (2009) (accord).[4]

**Second**, although it is true that Plaintiff has filed arbitration demands to preserve her claims in the event that she must ultimately arbitrate the merits of her ADEA case, IBM has failed to demonstrate that its request to dismiss and compel Plaintiff's claims can be granted – *at least at this time*. Plaintiff's complaint alleges that:

- In 2014, "IBM had its spokesperson provide pretextual and untruthful rationales" for changes to its separation agreements, including that it was no longer providing disclosures required by the Older Workers' Benefit Protections Act ("OWBPA"), and it began requiring private arbitration to protect purported privacy interests of its employees. See Dkt. 41 at ¶ 32-34.
- In reality, beginning in 2014, IBM's CEO and Chief Human Resources Officer (CHRO) "devised and implemented this scheme to conceal its discriminatory programs to oust older workers from the company and shift its age demographics to younger workers" (id. at ¶ 30). Inducing workers such as Plaintiff to sign its separation agreements was a key part of concealing its false rationales for laying off older workers. See also id. at ¶¶ 29-34.
- In furtherance of this scheme, Plaintiff Washbish was told that "her job was being

---

[4]     IBM points to three recent opinions from the Southern District of New York in cases involving IBM and similar issues concerning IBM's arbitration agreement and IBM's efforts to frustrate ADEA claims in arbitration. See Dkt. 44 at 3, citing Chandler v. International Business Machines Corp., 2022 WL 2473340 (S.D.N.Y. July 6, 2022), Lodi v. International Business Machines Corp., 2022 WL 2669199 (S.D.N.Y. July 11, 2022), and In Re: IBM Arbitration Agreement Litig., 2022 WL 2752618 (S.D.N.Y. July 14, 2022). Although IBM recently obtained dismissal of similar claims in the SDNY, as explained fully below, there are key factual and legal differences at issue in the case at bar and the SDNY opinions were otherwise erroneously decided. See Section III(A)(3), infra. Indeed, the SDNY orders have now been appealed to the Second Circuit.

transferred to an IBM office/facility in Dubuque, IA", but that statement was "false" and made in furtherance of IBM's discriminatory scheme.  Id. at ¶ 17.

- IBM's CEO and CHRO engaged in efforts to craft layoff programs, known by IBM as "Resource Actions," that targeted older workers in violation of the law,[5] while simultaneously requiring low-level managers to provide template letters to victims of their scheme to induce them to sign separation agreements.  See id. ¶¶ 35-42; see also id. at ¶ 40 ("IBM relied on low-level managers to fraudulently convey misleading information in order to induce Plaintiff and other similarly situated employees to sign IBM's standard separation agreement.").

The facts at issue raise the threshold question of whether Plaintiff was fraudulently induced to execute the arbitration provisions - a threshold contract formation question that Plaintiff must be afforded the opportunity to address after the completion of discovery into IBM's scheme.  See, e.g., Singh v. Uber Techs. Inc., 939 F.3d 210, 214 (3d Cir. 2019) (vacating a motion to dismiss and compel arbitration and holding that "discovery must be allowed" on the threshold question of whether the so-called "transportation worker" exemption from arbitration applied); McFarlane v. Altice USA, Inc., 524 F. Supp. 3d 264, 278 (S.D.N.Y. 2021) ("In Concepcion, the Court explicitly reaffirmed that the savings clause in Section 2 of the FAA, which permits arbitration agreements to be declared unenforceable upon such grounds as exist at law or in equity for the revocation of any contract, allows agreements to arbitrate to be invalidated by generally applicable contract defenses, such as **fraud**, duress, or unconscionability.") (citations and internal quotation marks omitted) (emphasis added); see also

---

[5]    See Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico., Inc., 999 F.3d 37, 58 (1st Cir. 2021) (even an employer who has a "compelling reason wholly unrelated to the [age] of any of its employees to reduce the size of its work force may still be liable under the ADEA if it use[s] the occasion as a convenient opportunity to get rid of its [older] workers.") (citations and internal quotation marks omitted); Matthews v. Commonwealth Edison Co., 128 F.3d 1194, 1195 (7th Cir. 1997) (accord); see also Rowell v. BellSouth Corp., 433 F.3d 794, 798 (11th Cir. 2005) (an age discrimination plaintiff can "present circumstantial statistical evidence regarding age; or evidence that the employer's plan was subterfuge for discrimination, such as evidence that an employee-rotation plan existed which shifted protected workers into jobs most likely to be cut in the reduction in force.").

<u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 339, 131 S. Ct. 1740, 1746, 179 L. Ed. 2d 742 (2011).[6]

Accordingly, Plaintiff respectfully requests that the Court either: (1) find that IBM's arbitration agreement is unenforceable and permit Plaintiff to proceed in this Court; or (2) declare that the timing provisions in IBM's arbitration provisions (which would deny Plaintiff a substantive right and the ability to effectively vindicate her ADEA claims in arbitration if enforced) are unenforceable and void, prior to compelling her to arbitration.

## II.      LEGAL STANDARD

On a motion to compel arbitration, a trial court is required to interpret the record as a whole in the light most favorable to the non-moving party.  <u>See</u> <u>Schnabel v. Trilegiant Corp.</u>, 697 F.3d 110, 113 (2d Cir. 2012).  Moreover, when reviewing a motion to compel arbitration, this Court "accept[s] as true for purposes of th[e] appeal factual allegations in the plaintiffs' complaint that relate to the underlying dispute between the parties."  <u>Id.</u> at 113 (2d Cir. 2012).[7]

A court then considers the facts in the complaint and the additional materials submitted by the parties and applies a "standard similar to that applicable for a motion for summary

---

[6]      While other Plaintiffs seeking to assert similar fraudulent inducement claims against IBM had their motion requesting leave to amend such claims denied (<u>see</u> <u>In Re: IBM Arbitration Agreement Litig.</u>, 2022 WL 2752618 at *10), Plaintiff explains below why that opinion is unpersuasive based on the facts at issue here – instead, this Court should follow another decision denying a motion to dismiss of a similar fraudulent inducement claim involving IBM.  <u>See</u> <u>McCormack v. International Business Machines Corp.</u>, 145 F. Supp. 3d 258, 268 (S.D.N.Y. 2015).

[7]      <u>See also</u> <u>Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.</u>, 944 F.3d 225, 233-34 (4th Cir. 2019) (holding that in review of an arbitration order under 9 U.S.C. § 4, "we accept as true the allegations of the Operative Complaint"); <u>see also</u> <u>U.S. Nutraceuticals, LLC v. Cyanotech Corp.</u>, 769 F.3d 1308, 1311 (11th Cir. 2014) ("When we rule on motions to compel arbitration, we look to the facts alleged in the [...] complaint.") (internal quotation omitted); <u>Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.</u>, 468 F.3d 523, 525 (8th Cir. 2006) (accepting allegations of complaint as true in reviewing court's denial of motion to compel arbitration).

judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). "In doing so, the court

must draw all reasonable inferences in favor of the non-moving party." Nicosia v. Amazon.com,

Inc., 834 F.3d 220, 229 (2d Cir. 2016).

## III.    ARGUMENT

### A.    The Court Should Enter a Declaration That the Timing Provision of IBM's Arbitration Agreement is Unenforceable and that Claimant Either May Proceed in This Court or Proceed in Arbitration Only After the Arbitration Agreement is Excised.

In seeking to compel Plaintiff to arbitration and have this Court enter a dismissal with

prejudice, IBM does not hide its ultimate goal.  IBM is not seeking to compel Plaintiff to

arbitration to litigate the merits of her ADEA claims which are timely as a matter of statute (**and

for which the EEOC provided here a "right to sue" letter pursuant to the ADEA's

statutory scheme**).  Instead, IBM seeks to send Plaintiff to arbitration where it will then argue

that the arbitrator, a creature of contract, must find that Plaintiff's claims are not timely by

operation of IBM's restrictive arbitration terms.[8]  See Dkt. 13 at 7 (claiming that Plaintiff's

"arbitration demands came years after the limitations period" and thus are "time-barred" while

failing to explain that IBM's time-barred arguments are based on its interpretation of the

contractual agreement – not the statutory rights guaranteed to Plaintiff under the ADEA which

may not be abridged by contract).

---

[8]    IBM does not hide the fact that it will argue that the "Time Limits" provisions of its
arbitration agreement require Plaintiff to waive a substantive right under the ADEA.  See
Arbitration Agreement (Ex. A to Kennedy Decl., Dkt. 14) at 4 (unlawfully purporting to limit the
substantive rights to litigate an ADEA claim and stating that "[t]he filing of a charge or
complaint with a government agency…shall not substitute or extend the time for submitting a
demand to arbitration.").  Notwithstanding IBM's purported contractual limitations, Plaintiff
timely filed a charge with the EEOC.  IBM cannot rely on its contract to argue that she cannot
pursue her claims in arbitration despite receiving a "right to sue" letter and favorable merits
determination from the EEOC.  Congress and the EEOC proscribe the substantive rights under
the ADEA – not IBM or its arbitration agreement.

IBM cannot have it both ways. IBM cannot seek to compel Plaintiff to arbitration (and to dismiss her claims) when IBM <u>is not agreeing to arbitrate</u> the underlying merits of her claims, and instead, is only seeking to get to arbitration so that it can tell the arbitrator that the arbitrator is required to adopt its contractual argument that, if accepted, would render its arbitration provisions unenforceable.  For those reasons, this Court should either: (1) deny IBM's motion to compel arbitration and find that IBM has waived its right to compel arbitration by refusing to submit to the Arbitrator's jurisdiction on the underlying merits; or (2) declare that the timing provisions in IBM's arbitration provisions are unenforceable to the extent that it would limit Plaintiff's ability to proceed in arbitration despite timely filing a charge with the EEOC and timely initiating her claims after receiving a "right to sue" letter from the EEOC following its extensive investigation.

1.      **In arguing that the arbitration agreement does not allow Plaintiff to adjudicate her claims on the merits, IBM has waived the right to arbitrate by its conduct.**

**<u>First</u>**, since IBM has asserted to this Court that the arbitration agreement, by its terms, does not permit the substance of Plaintiff's claims to proceed in arbitration, IBM has effectively conceded that it does not agree to arbitrate her ADEA claims on the merits.  This concession is tantamount to IBM conceding that the (timely) claims asserted here are not arbitrable (at least according to IBM) and that they therefore must be allowed to proceed in court since Plaintiff cannot waive her rights to litigate her ADEA claims.  IBM should not be able to compel Plaintiff's claims to arbitration when in reality it **<u>does not</u>** agree to arbitrate those claims on the merits. If there is any valid "waiver" at issue in this case[9], it is IBM's waiver of the right to

---

[9]     IBM argues that it is Plaintiff who has waived the right to challenge any of the terms in her arbitration agreement.  <u>See</u> Dkt. 44 at 9-10.  However, Plaintiff has not arbitrated the merits of her claims; the mere filing of an arbitration demand to preserve her rights in the face of IBM's

arbitrate based on its own refusal to arbitrate the merits of Plaintiff's claims under the terms of the arbitration agreement.  See Schreiber v. Friedman, No. 15CV6861CBAJO, 2017 WL 5564114, at *13 (E.D.N.Y. Mar. 31, 2017) (finding waiver of a right to arbitrate where a defendant's conduct in refusing to arbitrate prejudiced the plaintiff seeking to resolve their claims on the merits"); Stanley v. A Better Way Wholesale Autos, Inc., No. 3:17-CV-01215-MPS, 2018 WL 3872156, at *7 (D. Conn. Aug. 15, 2018) ("the Court concludes that ABW's conduct [in refusing to arbitrate] amounts to a waiver of its right to arbitrate."). And, if the Court is inclined to compel Plaintiff to arbitrate it must declare that her claims are timely and her substantive rights cannot be abridged by IBM's contract.

IBM's argument that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, requires the timing provisions in its agreement to be enforced (see Dkt. 44 at 20) without serious scrutiny is at odds with a recent U.S. Supreme Court opinion.  See Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1709, 212 L. Ed. 2d 753 (2022).  In Morgan, an employer argued that a heightened "waiver" standard should apply when determining whether the employer waived its right to arbitrate.  The Court rejected the employer's efforts to elevate its arbitration agreement above other contracts and found ordinary waiver principles applied.  See id. at 1713 ("a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not

_____

defensive tactics should not be viewed as a waiver of her right to challenge specific unconscionable terms in the arbitration agreement.  IBM's "waiver" argument is especially weak in this case where Plaintiff is not necessarily seeking to invalidate the arbitration agreement *in toto*, but instead is seeking to excise a provision that IBM argues prevents her from moving forward with the merits of claims that she timely filed with the EEOC.  IBM relies substantially on cases where parties are seeking to challenge an adverse arbitration award after the fact or challenging an arbitrator's authority after the proceedings have unfolded.  That is not the case here where there have been no substantive opinions in Plaintiff's arbitration, and she is not trying to evade arbitration – she is simply trying to ensure her case gets decided on the merits.

devise novel rules to favor arbitration over litigation.").  Here, if the Court finds that IBM has waived its right to arbitrate by only agreeing to arbitrate the merits of claims that are filed before a party even receives "a right to sue" letter from the EEOC, there is nothing in the FAA preventing the Court from making such a finding.[10]  See id.  ("If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.").

> ### 2.    The ADEA's timing scheme is a substantive right that cannot be abridged by contract.

**Second**, fatal to IBM's assertion that Plaintiff's claims are not timely under the terms of the arbitration agreement is that the Sixth Circuit's decision in Thompson, 985 F.3d at 521, makes abundantly clear, relying on the EEOC's interpretive expertise, that the timing provisions contained in the ADEA "are part of the **substantive law** of the cause of action created by the ADEA" and that "the limitations period[] in the . . . ADEA give[s] rise to substantive, non-waivable rights." Id. (emphasis added). As the Thompson court explained, that the EEOC has "an obligation upon receiving a charge to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion,'" id. (quoting 29 U.S.C. § 626(d)(2), and that "[a]ltering the time limitations surrounding [the EEOC's conciliation] processes risks undermining the [ADEA's] uniform application and frustrating efforts to foster employer cooperation." Id. The important concerns that undergirded the Thompson court's holding are equally present here. Plaintiff timely filed an EEOC charge that the EEOC

---

[10]       Moreover, the waiver argument Plaintiff Washbish makes here is distinct from any argument made by the plaintiffs in the Southern District of New York matters presently on appeal to the Second Circuit. See generally, Chandler, 2022 WL 2473340, Lodi, 2022 WL 2669199, and In Re: IBM Arbitration Agreement Litig., 2022 WL 2752618.

investigated, the EEOC attempted unsuccessfully to conciliate and issued a Notice of Right to

Sue, and now nevertheless because of the arbitration agreement, IBM asserts that Plaintiff is not

able to pursue her claim of age discrimination. Again, there is no dispute that absent the

arbitration agreement, Plaintiff could timely pursue her claim in court.

In similar proceedings, IBM has relied on a dated Second Circuit case that did not

address the same issue that is raised here IBM cites Vernon v. Cassadaga Valley Cent. Sch. Dist.,

49 F.3d 886, 890 (2d Cir. 1995) for the proposition that the ADEA, for the proposition that the

ADEA limitations period is substantive, and not procedural, meaning that the limitations period

can be abridged by contract. Vernon, however, is distinguishable. Vernon addressed whether

ADEA's limitations period was procedural or substantive for the purposes of determining

whether a legislative change to its limitations period would apply retroactively or prospectively,

concluding that for that purpose the limitations period was procedural (meaning its application

would be applicable retroactively). Id. Vernon did not address the question at issue in this case,

whether the limitations period created the kind of substantive right that cannot be abridged by

contract. As Judge Cabranes noted in his concurrence in Vernon, "statutes of limitations . . .

govern whether an individual can vindicate a right" and thus "lie on the cusp of the procedural

substantive distinction." Vernon, 49 F.3d at 892 (Cabranes, J. concurring). As such, he noted that

statutes of limitations are treated as "procedural" for some purposes, such as for choice-of-law

purposes, see Guaranty Trust Co. v. York, 326 U.S. 99 (1945), and as "substantive" for the

purposes of the Erie doctrine, see Sun Oil Co. v. Wortman, 486 U.S. 717, 727 (1988). See

Vernon, 49 F.3d at 892 (Cabranes, J. concurring).

Here, the ADEA limitations period may be procedural for the purposes of determining a

legislative change's retroactive applicability, but for the purposes of determining whether the

limitations period can be abridged by contract, it must be considered substantive. Indeed, the

EEOC took that position in Thompson, explaining "the ADEA's statutory limitations period is a

substantive right and prospective waivers of its limitations period are unenforceable."

Thompson, EEOC Brief, 2020 WL 1160190, at *19-23. The EEOC's reasonable interpretation of

the ADEA is entitled to deference. See E.E.O.C. v. Commercial Office Products Company, 486

U.S. 107, 115 (1988) ("[I]t is axiomatic that the EEOC's interpretation of [the ADEA], for which

it has primary enforcement responsibility, need . . . only be reasonable to be entitled to

deference."). This conclusion does not contradict the holding in Vernon, which was limited to

the context of determining whether a legislative change is retroactive and did not address the

question in this case. Vernon, 49 F.3d at 892.[11]

        IBM has erroneously relied on 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 265 (2009) to

support its arguments that the timing provisions in its arbitration agreement are enforceable.

Penn Plaza had nothing to say with respect to the issue of whether the ADEA's timing scheme

was a substantive right – it merely held that the right to a judicial forum was not a substantive

right, and that the plaintiff could pursue ADEA claims in an arbitral forum. See id. at 268-72.

Indeed, the Sixth Circuit explained in Logan v. MGM Grand Detroit Casino, 939 F.3d 824, 829

(6th Cir. 2019), that the "Supreme Court has told us that where statutes that create rights and

---

[11]     IBM may cite Spira v. J.P. Morgan Chase & Co., 466 F. App'x. 20, 22-23 (2d Cir. 2012),
as it has in similar cases, but that case has nothing to do with the ADEA limitations period. IBM
merely cites it for the proposition that "limitations periods generally do not modify underlying
substantive rights." But in the context of the ADEA, the EEOC has argued otherwise, and this
Court must pay appropriate deference. See Thompson, EEOC Brief, 2020 WL 1160190, at *19-
23. IBM also cites Browning v. AT&T Paradyne, 120 F.3d 222, 225 (11th Cir. 1997), and
Garfield v. J.C. Nichols Real Estate, 57 F.3d 662, 665 (8th Cir. 1995), but like Vernon, these
cases concerned the retroactively applicability of a legislative change to ADEA's limitation
period. Given the EEOC's more recent position, these out-of-circuit cases are unpersuasive.

remedies contain their own limitation periods, the limitation period should be treated as a substantive right" that "generally is not waivable in advance by employees." (citing Davis v. Mills, 194 U.S. 451, 454 (1904); Brooklyn Savs. Bank v. O'Neil, 324 U.S. 697, 704 (1945)).

In similar proceedings, IBM has also made the argument that the Sixth Circuit's decisions in Thompson and Logan were only applicable to the court litigation context and not to arbitration. IBM has argued that the Logan court distinguished an earlier decision, Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003), which found that an arbitration provision abridging the limitations period for a Title VII claim was enforceable, because it did not unduly burden the effective vindication of the plaintiff's Title VII claim in arbitration.[12] See Logan, 939 F.3d at 837-38. The Logan court pointed out that resolving the question in Morrison "required carefully balancing the 'liberal policy favoring arbitration and the important goals of federal anti-discrimination statutes.'" Logan, 939 F.3d at 838. However, there is a key distinction between the ADEA and Title VII that alters this balance. Unlike Title VII, the ADEA includes the requirements of the Older Workers' Benefits Protection Act ("OWBPA"), 29 U.S.C. § 626(f), in order to obtain a valid waiver from an employee of "any right or claim" under the ADEA. See Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427 (1998); 29 C.F.R. § 1625.22(f). The OWBPA protects employees from waiving "any right or claim" without the employer first meeting several strict conditions, including submitting disclosures to employees that would permit them to scrutinize whether they had been discriminated against on the basis of age.[13] See

---

[12]     Notably, in Morrison, there was no indication that the plaintiff had been burdened at all by the limitations provision of the arbitration agreement, because in fact the plaintiff had been able to actually arbitrate her claim on the merits to a final award. Morrison, 317 F.3d at 655.

[13]     The OWBPA also requires that in order for a waiver to be valid, it must be "a part of an agreement between the individual and the employer that calculated to be understood by such

Oubre, 522 U.S. at 427. As Thompson and the EEOC[14] have made clear that the ADEA timing

scheme is a substantive right, the protections of the OWBPA. See Estle v. International Business

Machines Corp., 23 F.4th 210, 214 (2d Cir. 2022) (holding that the OWBPA protects substantive

rights under the ADEA). Thus, even if IBM could reasonably truncate the ADEA limitations

period in arbitration (it cannot in light of Thompson), it could only do so after satisfying with the

OWBPA, which it did not do. Given the fact that the ADEA timing provision is a substantive

right, IBM simply cannot claim that it can compel Plaintiff to arbitration and then deny her

substantive right to bring her claims.

Finally, while IBM may argue that the Court should not excise its unenforceable

arbitration provisions, it is routine for courts to excise substantively unconscionable provisions

from arbitration agreements (so that the rest of the arbitration agreement can be enforced). See,

e.g., Ragone v. Atlantic Video at Manhattan Ctr., 595 F.3d 115, 124-25 (2d Cir. 2010); Woo

Jung Cho v. Cinereach Ltd., 2020 WL 1330655, at *5 (S.D.N.Y. March 23, 2020); Chung Chang

v. Warner Bros. Entertainment, Inc., 2019 WL 5304144, at *3-4 (S.D.N.Y. Oct. 21, 2019);

Castellanos v. Raymours Furniture Co., 291 F. Supp. 3d 294, 300-02 (E.D.N.Y. 2018); Valle v.

ATM Nat., LLC, 2015 WL 413449, at *6 (S.D.N.Y. Jan. 30, 2015). Accordingly, should this

Court hold that Plaintiff should proceed in arbitration, it should fist excise the arbitration

agreement and expressly hold that IBM's timing provisions (and their effect in denying

---

individual, or by the average individual eligible to participate." 29 U.S.C § 626(f)(1)(A). This
requirement was likewise not met because the timing provision was ambiguous and required the
employees to have a thorough understanding of employment discrimination law and
administrative exhaustion to parse what it meant.

[14]     See Thompson v. Fresh Products, LLC, EEOC Brief, 2020 WL 1160190, at *19-23
(S.D.N.Y. March 2, 2020).

substantive rights to Plaintiff) are unenforceable.

### 3. Recent opinions from the SDNY involving IBM are unpersuasive.

IBM argues that recent opinions in <u>Chandler</u>, 2022 WL 2473340, <u>Lodi</u>, 2022 WL 2669199, and <u>In Re: IBM Arbitration Agreement Litig.</u>, 2022 WL 2752618 (collectively the "SDNY matters"), require dismissal of Plaintiff's claims. IBM is mistaken, as there are unique factual differences in this case which distinguish it from the recent SDNY opinions. Moreover, as fully explained below, the SDNY opinions were otherwise erroneously decided and are pending on appeal.

As a factual matter, unlike the Plaintiffs in the SDNY matters, Plaintiff Washbish promptly filed an arbitration demand within 90 days of receiving an EEOC letter to preserve her claims <u>and</u> there has been <u>no merits determination or substantive ruling</u> from an Arbitrator in her case. In contrast, in <u>Lodi</u>, the plaintiff sought a declaratory judgment in court only *after* the arbitrator dismissed her claims based on IBM's argument that its contractual restrictions in the arbitration agreement rendered her claims untimely. <u>See</u> <u>Lodi</u>, 2022 WL 2669199, at *1. Similarly, in <u>Chandler</u>, the plaintiff had already had his claims dismissed in arbitration. In <u>In Re: IBM Arbitration Agreement Litig.</u>, all but two plaintiffs already had their claims dismissed in arbitration and the two other Plaintiffs were seeking to "piggyback" off of EEOC charges filed by similarly situated individuals. Here, Plaintiff Washbish indisputably timely filed her own EEOC charge, filed her ADEA claims within the time period provided in the EEOC's right to sue letter, and her case has not been adjudicated in arbitration.

In the <u>Chandler</u> and <u>In Re: Arbitration Agreement Litig.</u> decisions,[15] the courts rejected

---

[15]   Judge Furman's decision in <u>In Re: IBM Arbitration Agreement Litig.</u> simply repeated the reasoning articulated by Judge Koeltl in <u>Chandler</u>.

the plaintiffs' argument that the IBM arbitration agreement's purported waiver of the piggybacking rule is unenforceable. Id.  Here, however, there is no issue of "piggybacking" as Plaintiff Washbish indisputably filed her own timely EEOC charge and therefore she need not "piggyback" off the charge of others impacted by IBM's scheme.[16]  Moreover, as explained below, Plaintiff respectfully maintains that Judges Koeltl and Furman were mistaken on several key points and that this the Court should not follow these rulings.

First, in his Chandler decision, Judge Koeltl misapprehended the import of Thompson, 985 F.3d at 521. As explained previously, relying on the EEOC's interpretive expertise,[17] Thompson held that the timing provisions contained in the ADEA "are part of the **substantive law** of the cause of action created by the ADEA" and that "the limitations period[] in the . . . ADEA give[s] rise to substantive, non-waivable rights." Id. (emphasis added). Judge Koeltl, however, disregarded Thompson, because it did not address the question of "whether under the FAA, parties may agree in an arbitration agreement to adopt procedures that modify the filing deadline for an ADEA claim in arbitration." Chandler, at 15.  Thompson is important not just because it held that the timing scheme of the ADEA was a substantive right that cannot be abridged by contract, but also because that holding means that the protections of the OWBPA are triggered. The OWBPA mandates strict requirements that an employer must meet before an employee can waive any "right or claim" under the ADEA, including disclosures regarding the ages of employees selected and not selected for layoff. See 29 U.S.C. § 626(f)(1).[18]

---

[16]     Ultimately, the Second Circuit will need to decide the issue.

[17]     See Thompson, EEOC Brief, 2020 WL 1160190, at *19-23.

[18]     IBM cannot dispute that it did not provide these disclosures to Plaintiff.

To reiterate, even if it were possible to abridge the ADEA limitations period by contract (it is not, under Thompson), **IBM would have had to first meet the requirements of the OWBPA in order to validly do so.** Judge Koeltl disregarded the requirements of the OWBPA, because he mistakenly believed that the piggybacking rule was a procedural right rather than a substantive right.[19] As described *supra*, Thompson, 985 F.3d at 521, makes clear that the ADEA's limitations period is a substantive right.  According to IBM's own arguments here, Plaintiff did not have the full time to assert her ADEA claim in arbitration that she would have had to assert it in court, meaning that her **substantive rights** were abridged, and IBM did not meet the requirements of the OWBPA. See 985 F.3d at 521.  This failure to satisfy the OWBPA renders the timing provision unenforceable.

Furthermore, Judge Koeltl's approach ignores an important purpose of the OWBPA as it pertains to the ADEA limitations period.  As the Second Circuit has explained, "[t]o protect the rights and benefits of older workers, Congress amended the ADEA in 1990 through the OWBPA by adding, inter alia, 29 U.S.C. § 626(f), which regulates employee waivers and releases under the ADEA." Powell v. Omnicom, 497 F.3d 124, 131 (2d Cir. 2007) (internal citations omitted). The OWBPA requires that, before giving up the right to bring an age discrimination claim, employees must be given information from the employer that would allow them to consider if they have an age discrimination claim.[20] See Oubre, 522 U.S. at 427. Here, if IBM is correct that

---

[19]    The Second Circuit has held in Estle v. International Business Machines Corp., 23 F.4th 210, 213 (2d Cir. 2022), the OWBPA only applies to substantive rights and not procedural rights.

[20]    The OWBPA also requires that in order for a waiver to be valid, it must be "a part of an agreement between the individual and the employer that calculated to be understood by such individual, or by the average individual eligible to participate." 29 U.S.C § 626(f)(1)(A). This requirement was likewise not met because the timing provision was ambiguous and required the employees to have a thorough understanding of employment discrimination law and

its timeliness provision is enforceable, IBM essentially caused Plaintiff to waive her claim, since she did not get OWBPA disclosures that would allow her to assess the viability of an ADEA claim within the time period to assert an arbitration demand. This is exactly the kind of scenario that the OWBPA is intended to prevent.

Judge Koeltl then repeated the same errors in <u>Lodi</u> by concluding that the timing provision in IBM's arbitration agreement is "procedural" rather than substantive.  In doing so, he dismissed the claims of an individual who timely filed an EEOC charge and was stymied by IBM's arbitration provision when he sought to arbitrate.[21] Shortly thereafter, Judge Furman issued his decision in <u>In Re: IBM Arbitration Agreement Litig.</u>, simply following Judge Koeltl's flawed reasoning. <u>See</u> <u>In Re: IBM Arbitration Agreement Litig.</u>, 2022 WL 2752618, at *7-9.

Therefore, the <u>Chandler</u>, <u>Lodi</u>, and <u>In Re: Arbitration Agreement Litig.</u> decisions are unpersuasive in this matter, and the Court should deny IBM's Motion to Dismiss.

### B. Plaintiff Should Be Permitted to Engage in Discovery Pertaining to IBM's Scheme to Fraudulently Induce Plaintiff to Waive Her Right to Proceed in Court.

IBM bears the burden of proving that there are no facts in dispute pertaining to the question of whether arbitration should be compelled. <u>See</u> <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the Federal Arbitration Act ('FAA'), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment.").  IBM cannot meet its burden in this case where there are genuine facts in dispute regarding whether IBM fraudulently induced Plaintiff to

---

administrative exhaustion to parse what it meant.

[21]    In support of his opinion, Judge Koeltl relied heavily on <u>Gilmer</u>, but <u>Gilmer</u> did not address the issue of whether the statute of limitations afforded to an ADEA plaintiff/claimant is a substantive right that may not be abridged by contract.

execute its arbitration agreement in connection with her (unlawful) termination from IBM.

Indeed, because "**there is an issue of fact as to the making of the agreement for arbitration**

**[a] trial is necessary. 9 U.S.C. § 4.**" Id. (emphasis added). If the Court does not find that

IBM's arbitration agreement is unenforceable and that her claims should proceed in this Court,

Plaintiff should be permitted to engage in discovery and to have a hearing regarding whether she

was fraudulently induced to enter into the arbitration agreement that IBM seeks to enforce. See

Singh v. Uber Techs. Inc., 939 F.3d at 214 (vacating a motion to dismiss and compel arbitration

and holding that "discovery must be allowed" prior to determining arbitrability in a case where

facts were in dispute impacting the question of arbitration).

Here, Plaintiff alleges in her Amended Complaint that in 2014, "IBM had its

spokesperson provide pretextual and untruthful rationales" for changes to its separation

agreements, including that it was no longer providing disclosures required by the Older Workers'

Benefit Protections Act ("OWBPA") and that it began requiring private arbitration to protect

purported privacy interests of its employees. See Dkt. 41 at ¶ 32-34. In reality, beginning in

2014, IBM's CEO and Chief Human Resources Officer (CHRO) "devised and implemented this

scheme to conceal its discriminatory programs to oust older workers from the company and shift

its age demographics to younger workers" (id. at ¶ 30). Inducing workers such as Plaintiff to sign

its separation agreements was a key part of concealing its false rationales for laying off older

workers. See also id. at ¶¶ 29-34. In furtherance of this scheme, Plaintiff Washbish was told that

"her job was being transferred to an IBM office/facility in Dubuque, IA", but that statement was

"false" and made in furtherance of IBM's discriminatory scheme. Id. at ¶ 17. IBM's CEO and

CHRO engaged in effort to craft layoff programs, known by IBM as "Resource Actions," that

targeted older workers in violation of the law, while simultaneously requiring low-level

managers to provide template letters to victims of their scheme to induce them to sign separation agreements.  See id. ¶¶ 35-42; see also id. at ¶ 40 ("IBM relied on low-level managers to fraudulently convey misleading information in order to induce Plaintiff and other similarly situated employees to sign IBM's standard separation agreement.").

Indeed, Plaintiff is one of many similarly situated individuals who the EEOC found to be the victim of systemic and sweeping age discrimination at IBM.  See id. at ¶ 21, n.1 (referencing the EEOC's August 2020 Determination Letter).  Plaintiff's counsel has been litigating with IBM for years and recently discovered shocking evidence of the lengths to which IBM has gone to hide its discriminatory scheme and fraudulently induce individuals to sign severance agreements containing IBM's restrictive arbitration provisions.  Judge Liman of the Southern District of New York has recently described these documents and they include: " Communications between high-level IBM executives in which they discussed how the percentage of millennials employed at IBM trailed that of competitor firms, used a disparaging term to describe older IBM employees, and described layoffs that would help change the age distribution of employees at IBM," as well as documents "that discussed a strategic relocation program that was allegedly used to ensure the resignation of older employees from the company."  See Lohnn v. Int'l Bus. Machines Corp., 2022 WL 36420, at *12 (S.D.N.Y. Jan. 4, 2022).  This evidence, as well as additional evidence Plaintiff should be permitted to obtain during discovery, must be presented to the court at a hearing before the question of arbitrability can be resolved.

Discovery and a hearing well may show that IBM in fact fraudulently induced Plaintiff into signing an arbitration agreement designed to make it difficult if not impossible for her (and other similarly situated individuals) to vindicate their statutory rights.  Accordingly, here "there is an issue of fact as to the making of the agreement for arbitration [a] trial is necessary.  9

U.S.C. § 4." <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d at 175.[22]

IBM argues that the Court should dismiss the claim here because <u>In Re: IBM Arbitration Agreement Litig.</u>, found such a proposed claim would be futile in that case. However, the court in that case was dealing primarily with plaintiffs who already had their claims dismissed in arbitration, and the court found a waiver where they already had their claims adjudicated. <u>See</u> 2022 WL 2752618, at *10. That rationale does not apply here where Plaintiff's claims have not been adjudicated anywhere. While the court also denied leave to amend to two other plaintiffs who had not had their claims fully adjudicated, <u>see id.</u> at *11, the reasoning of this decision was flawed and has been appealed to the Second Circuit. The court reasoned that these plaintiffs' proposed amended complaint did not satisfy the heightened pleading standard because they failed to identify the speaker who fraudulently induced them or where the statements were made. <u>See id.</u> However, the Court failed to realize that the complaint sufficiently identifies that IBM's

---

[22]     IBM argues that Plaintiff's claim for fraudulent inducement fails because it is merely a recasting of her discrimination claim that does not challenge "import or content of the arbitration clause itself." Dkt. 44 at 2, citing <u>Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.</u>, 117 F.3d 655, 668 (2d Cir. 1997) (internal quotation marks omitted). However, IBM's arguments are entirely based on factual and legal misapprehensions, most plainly demonstrated in its utter disregard for a remarkably similar case, <u>McCormack v. International Business Machines Corp.</u>, 145 F. Supp. 3d 258, 268 (S.D.N.Y. 2015). In <u>McCormack</u>, the plaintiffs sought to invalidate a separation agreement that purported to release the plaintiffs' ADEA claims against IBM, asserting that the release was invalid since it was fraudulently induced. <u>See id.</u> at 273 ("[T]he Court … addresses Defendant's arguments that 'Plaintiffs cannot recast their claims of employment discrimination as fraudulent inducement.'"). As in <u>McCormack</u>, IBM once again argues that Plaintiff's fraudulent inducement claim is merely a "recasting [of] her discrimination claim." Dkt. 44 at 2. The <u>McCormack</u> court rejected this argument outright, finding that a plaintiff who affirmatively pleads that he or she was fraudulently induced to sign a separation agreement based on an employer's misrepresentations regarding the reason for his or her termination states a cognizable claim that is distinct from an underlying discrimination claim. <u>See id.</u> at 275 ("Whether Defendant made misrepresentations in connection with the Separation Agreements bears on the question of whether the waivers were knowing and voluntary, or, more to the point, whether Defendant can meet its burden of substantiating this affirmative defense.").

spokespersons and executives made numerous statements to mislead its workforce – both publicly and internally at IBM – and that Plaintiff and others were presented with a specific template letter by their low-level managers **at the time they were noticed of their termination**, to fraudulently mislead them into thinking they were being laid off for pretextual reasons. Certainly, at the pleading stage, even with a heightened pleading standard, the allegations are sufficiently definite and clear to put IBM on fair notice as to the specific fraudulent actions to induce Plaintiff to sign its arbitration agreement. See McCormack, 145 F. Supp. 3d at 276 ("There is no doubt, based on [the allegation that Plaintiff received an email from his supervisor that he was being terminated as part of a cost-driven resource action], that Lingl identifies the statements that he contends were fraudulent") (citation and internal quotation marks omitted). For the reasons set forth in McCormack, Plaintiff has set forth a viable claim for relief based on similar allegations that she was induced to sign a separation agreement based on the fraudulent content of a "template" letter she was provided by her managers at the time of her termination. See Dkt. 41 at ¶¶ 29-42 (describing IBM's scheme of inducing employees to sign separation agreements by having their low-level manager provide a false template letter regarding their termination). In a footnote, the court in In Re: IBM Arbitration Agreement Litig. unconvincingly attempted to distinguish McCormack by finding that the allegations "did not specify when these 'template letters' were sent" in supposed contrast to McCormack. See In Re: IBM Arbitration Agreement Litig., 2022 2752618, at *11 n.16. Even if In Re: IBM Arbitration Agreement Litig. was correct that the plaintiffs' pleadings were deficient (they were not), here, the Amended Complaint specifically states that Plaintiff was terminated on August 17, 2016 and that she was provided "false" information in connection with her termination. See Dkt. 41 at ¶ 11, ¶ 17.

22

As in <u>McCormack</u>, whether IBM engaged in fraudulent conduct to induce Plaintiff to execute the arbitration agreement "bears on the question of whether the waivers were knowing and voluntary."  <u>See</u> <u>id.</u> at 275 ("Whether Defendant made misrepresentations in connection with the Separation Agreements bears on the question of whether the waivers were knowing and voluntary, or, more to the point, whether Defendant can meet its burden of substantiating this affirmative defense.").  This Court should permit the parties to engage in discovery on this key issue.  Before such discovery is conducted, the Court should not rule on the merits of Plaintiff's fraudulent inducement claim.

## IV.        CONCLUSION

For the foregoing reasons, IBM's motion to dismiss Plaintiff's complaint with prejudice should be denied.  This Court should permit Plaintiff's complaint to proceed in this Court.  However, if the Court finds Plaintiff should be compelled to arbitration, the Court should first declare that any purported contractual restrictions on Plaintiff's substantive rights to bring her claims under the ADEA are unenforceable and void.


Dated: August 8, 2022                    Respectfully submitted,

                                         GAIL A. WASHBISH,

                                         By her attorneys,

                                         */s/ Zachary L. Rubin*
                                         Zachary Rubin (ct30192)
                                         LICHTEN & LISS-RIORDAN, P.C.
                                         729 Boylston Street, Suite 2000
                                         Boston, MA 02116
                                         (617) 994-5800
                                         zrubin@llrlaw.com

                                         AND

23

Eugene A. Skowronski
Law Offices of Eugene A. Skowronski
Webster Bank Building
200 Division Street
Ansonia, CT 06401
Tel. No. 203-734-3315
Juris No. 413636

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of August 2022, the foregoing document was filed

electronically on the Court's ECF electronic filing system. Notice of this filing will be sent to all

parties by operation of the Court's electronic filing system. Parties may access this filing through

the Court's ECF system.

*/s/ Zachary L. Rubin*
Zachary L. Rubin (ct30192)